974 A.2d 965

**In re ADOPTION/GUARDIANSHIP OF AUDREY
B., Adriana H., and Eric H.**

**No. 2369, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

July 2, 2009.

Nenutzka C. Villamar (Nancy S. Forster, Public Defender, on the brief), Baltimore, MD, for Appellant.

Steven W. Boggs (Darlene A. Wakefield, PA, on the brief), Baltimore, MD, for Appellee.

Panel: HOLLANDER, and GRAEFF, JJ., and J. FREDERICK SHARER (Retired, Specially Assigned).

SHARER, J.

In the Circuit Court for Baltimore City, Division for Juvenile Causes, the Baltimore City Department of Social Services ("BCDSS") filed petitions for Guardianship With the Right to Consent to Adoption or Long Term Care Short of Adoption, seeking to terminate the parental rights of Kellie B. to three children: Audrey B., Adriana H., and Eric H.

Kellie B. filed, albeit late, objections to the petitions in each case. The BCDSS moved to strike the late-filed objections and the court, after a hearing, granted the motion. It is that ruling that Kellie B. challenges in this appeal, contending that the juvenile court erred in ruling that statutory provisions of the Permanency for Families and Children Act of 2005, ("the Act"),[1] do not permit withdrawal of a consent to guardianship entered by operation of law.[2]

We shall affirm for the reasons set forth below.

## BACKGROUND

Kellie B. is the mother of Audrey, born on September 25, 1997; Adriana, born on November 2, 1999; and Eric, born on August 12, 2005. Birth certificates indicate that Jerome H. is the father of Adriana and Eric. Although Audrey's birth certificate does not indicate a father, Jerome H. is asserted to be Audrey's putative father in the TPR Petition filed by BCDSS in her case.

On October 12, 2004, for reasons not apparent in the record, both Audrey and Adriana were placed in foster care, found to be children in need of assistance ("CINA"), and committed to the custody of BCDSS. Approximately ten months later, on August 15, 2005, and three days after he was born, Eric was also placed in foster care with BCDSS. Thereafter, on September 9, 2005, again for reasons not apparent in the record, Eric was found to be a CINA and committed to BCDSS.

On August 13, 2008, BCDSS filed TPR Petitions seeking guardianship of each of the children in case numbers T08204021, T08204022, and T0820423, respectively.[3] On that

---

1. 2005 Md. Laws, ch. 464 (Senate Bill 710).

2. Specifically, in her opening brief, Kellie B. frames the question as: Whether under Family Law § 5–320 and § 5–321 the court erred in striking appellant's objection to the TPR petition filed 32 days after she was served with the TPR petition?

3. The Petitions were first docketed on July 22, 2008, but stamped as "received" by the juvenile court on August 13, 2008.

same day, three Show Cause Orders were filed in the afore-mentioned cases: one addressed to Kellie B.; another to Jerome H.; and, the third addressed to the three children.[4] Each of the Show Cause Orders conspicuously warned the recipient that:

THIS IS A COURT ORDER. IF YOU DO NOT UNDER-STAND WHAT THE ORDER SAYS, HAVE SOMEONE EXPLAIN IT TO YOU. YOUR RIGHT TO AN ATTOR-NEY IS EXPLAINED IN PARAGRAPH 3 OF THIS ORDER. IF YOU DO NOT MAKE SURE THAT THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE DEADLINE STATED IN PARA-GRAPH 2 OF THIS ORDER, YOU HAVE AGREED TO A TERMINATION OF YOUR PARENTAL RIGHTS.

Further, and pertinent to the instant appeal, the Show Cause Order advised Kellie B. as follows:

2. RIGHT TO OBJECT; TIME FOR OBJECTING.

If this Order is served on you by October 27,2008, and if you wish to object to the guardianship, you must file a notice of objection with the Clerk of the Court at the Baltimore City Juvenile Justice Center, 300 North Gay Street, Room A3320, Baltimore, Maryland, 21202 within 30 days after this Order is served on you. For your convenience, a form notice of objection is attached to this Order.

WHETHER THE PETITION REQUESTS ADOPTION OR GUARDIANSHIP, IF YOU DO NOT MAKE SURE THAT THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE DEADLINE STAT-ED ABOVE, YOU HAVE AGREED TO A TERMI-NATION OF YOUR PARENTAL RIGHTS.

Similar language appears elsewhere in the Order, and these warnings conform to the requirements of Md. Rule 9–105(e) (setting forth the form of show cause order). Comparable

---

4. The Show Cause orders are marked "received" in the juvenile court as of August 13, 2008, but were issued, approved, and docketed on August 12, 2008.

orders also were issued to Jerome H., as well as to the children.

On August 26, 2008, Kellie B. was personally served with a copy of the Petitions and the Show Cause Orders, as well as two Notice of Objection forms. Two days later, on August 28, 2008, Jerome H. was personally served with a copy of the Petitions and the Show Cause Orders at the Baltimore City Detention Center. That same day, Jerome H. filed an objection to the guardianship petitions.[5]

On September 11, 2008, an attorney entered his appearance on behalf of Audrey, Adriana and Eric, and filed a Consent to Guardianship Petition. That consent expressly provides that the attorney, on behalf of the children, "hereby Consents to the Petition filed by the Baltimore City Department of Social Services request[ing] Guardianship With the Right to Consent to Adoption or Long–Term Care Short of Adoption in the above-captioned case."

On September 30, 2008, 35 days after she was personally served, Kellie B. filed a Notice of Objection to the Petitions and also requested appointment of an attorney.[6] Kellie B. listed the following reasons in support of her Objection:

> I object because I feel as though there are no reasons my children shouldn't be in my care. When I have four of my other children. I want these children returned to me. I don't want my children placed anywhere then [sic] with me. This has been an ongoing battle against a case that holds no substationed [sic] evidence. I object to the termination of parental rights. Also the adoption.

---

5. On September 18, 2008, after Jerome H. apparently was released from the detention center and filed a change of address, he also filed an additional objection to the guardianship petitions. The record also indicates Jerome H.'s attorney was served with a copy of the Petitions and the Show Cause Orders on August 29, 2008. Jerome H. has not filed a brief in this Court.

6. An attorney representing Kellie B. entered her appearance in the juvenile court on October 1,2008.

On October 14, 2008, BCDSS filed a Motion to Strike Late Objection, asking that the juvenile court strike Kellie B.'s objection as untimely filed. In that motion, after informing the juvenile court that Kellie B. was served on August 26, 2008, and filed her objection on September 30, 2008, BCDSS contended:

> Md. Rule 9–107 provides that a party has 30 days to file an objection if served in the [S]tate of Maryland. [Ms. B.'s] objection should have been filed by the close of business on September 25, 2008 to be considered timely.

On November 19, 2008, Kellie B. filed an answer to the BCDSS's Motion to Strike Late Objection. In her answer, Kellie B. contended that a failure to file a timely Notice of Objection is a voluntary consent under § 5–320 of the Family Law Article, and that such a volitional consent may be revoked.[7] Therefore, Kellie B. continued, because a volitional consent may be revoked within thirty days, her Notice of Objection filed with the juvenile clerk "on September 30, 2008, more than thirty but less than sixty days after she was served with the Show Cause Order, is a timely revocation of consent and satisfies the requirements of" Md. Rule 9–102 and § 5–321 of the Family Law Article. *See* Md. Rule 9–102 (addressing consents; revocation of consent); Md.Code (2006 Repl. Vol.), § 5–321 of the Family Law Article (consent).

On December 9, 2008, the juvenile court held a hearing on BCDSS's motion, at which counsel for BCDSS contended that Kellie B.'s Notice of Objection was untimely and should be stricken. Counsel for Kellie B. conceded that the Notice of Objection was late-filed. However, counsel suggested that, under the 2005 revisions to the Family Law Article, the failure to timely file an objection was not a "deemed consent," and that § 5–320 now "sets up this way of affirmatively and volitionally consenting to a termination of parental rights." In furtherance of her position, counsel for Kellie B. elaborated:

---

7. All statutory references are to Md.Code (2006 Rep. Vol.), Family Law, Title 5, "Children," unless otherwise indicated.

Family Law Article [ ] 5–321(c) allows revocation by a parent of a consent to guardianship within 30 days except when that consent is entered into before a judge on the record. And that is the exact wording of 321, 5–321. By carving out this exception, the one way that you can not, that it is irrevocable, and only that way, bolsters my argument that the other ways of consenting, which are listed in 5–320, can be revoked within the 30 day period.

Accordingly, counsel continued, "by filing her revocation more than 30 but less than 60 days after service with the show cause order, that satisfies the requirement of Family Law Article 5–321 and Maryland Rule of Procedure 9–102. And we are asking that [the juvenile court] deny the Department's motion to strike the late objection."

Counsel for BCDSS responded first, that Md. Rule 9–102 applies only to written consents. As for § 5–321, BCDSS's counsel stated:

That includes a waiver and the written [sic] as under 9–102, there's a 30 day period to reconsider and revoke the written consent. It doesn't speak, the statute doesn't speak at all to dealing with a default. I don't think the legislature intended to extend an objection period by 30 more days by considering a default a, some kind of consent. You know, it says 30 days. It's very clear it says 30 days and if, you know, the writing that was actually filed with the Court is an objection form that was served on the mother on the 26th of August. I don't think that that supports her argument that she was writing, she was filing a writing that was revoking her consent. I[t] basically said I object and it was filed late therefore its [sic] not valid and I'd ask the Court to strike that objection.

In response to the court's inquiry, counsel for Kellie B. stated that she was referring to § 5–321(c) "where it says a person may revoke consent any time within the later of 30 days after the person signs the consent or 30 days after the consent is filed as required." The court then stated, "[o]kay, but doesn't that sort of indicate that something is done, that

there's either a signature of a consent or that something is filed, that there is an act?"

Counsel for Kellie B. disagreed and suggested that § 5–321 should be read in conjunction with § 5–320, which provides three ways a parent may consent to guardianship. Counsel contended that only a § 5–320(b) consent, "knowingly and voluntarily on the record before the juvenile court," is irrevocable. Counsel suggested as an underlying purpose:

And the, you know, by doing that it, and the purpose, of course, is to protect, if you will, parents from making kind of rash or hasty decisions about such an important right to consent and so on. And that's why, only when it's done in the court, and I guess because the court would make inquiry and make sure and so on, all the things that you do, when the parent does this, consents on the record in front of a judge. That's the only way, the only thing that's irrevocable. And of course whenever you do that you tell them this is it, this is it if you change your mind. The two other ways that's not so because they haven't been, you don't have those safeguards to make sure that its volitional and make sure its exactly what the person wants to do. And one of those ways is this failure to file a timely notice of objection.

The court disagreed and found good cause to grant BCDSS's motion to strike the late objection, stating:

[Its] an interesting argument. Unfortunately I don't agree with it. I don't think that 5–321(c) is really relevant or relates to a situation which is basically a default situation so I'm going to grant the Department's motion.[8]

On December 11, 2008, Kellie B. filed a Notice of Appeal to this Court from the December 9, 2008, ruling granting BCDSS's motion to strike late objection.[9]

---

**8.** The court's written order reads: "The Court having considered the request of the Baltimore City Department of Social Services for motion to strike mother's late objection and there appearing to be good cause therefore, the request is hereby granted."

**9.** On January 13, 2009, Kellie B. filed a Petition to Stay TPR Proceedings, which was granted the same day. The next day, January 14, 2009,

## DISCUSSION

Summarizing the contentions of the parties, appellant, Kellie B., first argues that the juvenile court erred in striking her Notice of Objection to the Petitions for Guardianship because, under the Act:

(1) her failure to file a timely Notice of Objection was a volitional consent and not a "deemed consent", *i.e.*, a consent by operation of law; and,

(2) the Legislature has only provided that consents to guardianship entered before a judge are irrevocable.

Appellee BCDSS responds that Kellie B. has conceded that she did not timely file a Notice of Objection to the Petitions, and that, under the reasoning of *In re Adoption/Guardianship No. 93321055*, 344 Md. 458, 687 A.2d 681 (construing the earlier statute), *cert. denied sub nom. Clemy P. v. Montgomery County DSS*, 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997), as well as the legislative history of the 2005 Act, Kellie B.'s deemed consent is irrevocable.

Lastly, the children, by counsel, also assert that Kellie B.'s deemed consent is irrevocable.

We are, therefore, presented with an issue of statutory construction; thus, we begin our analysis with the following principles in mind:

> Our predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself. If the language is clear and unambiguous, our search for legislative intent ends and we apply the language as written in a commonsense manner. We do not add words or ignore those that are there. If there is any ambiguity, we may

---

the juvenile court scheduled a Settlement Conference for April 15, 2009, and scheduled the Termination of Parental Rights Hearing in these cases for May 19–20, 2009. Subsequently, the court rescheduled the Settlement Conference for May 20, 2009, and the merits trial for June 8, 2009. This Court set this case for oral argument for May 8, 2008; however, prior to that date, the parties submitted on brief pursuant to Maryland Rule 8–523(a)(1).

then seek to fathom the legislative intent by looking at legislative history and applying the most relevant of the various canons that courts have created.

*Downes v. Downes,* 388 Md. 561, 571–72, 880 A.2d 343 (2005); *see also Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175 (2006) ("where an order [of the trial court] involves an interpretation and application of Maryland constitutional, statutory or case law, [the appellate court] must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review").

The procedures that govern guardianships are found in §§ 5–313 to 5–528 of the Family Law Article and their implementing rules; [10] *In re Adoption/Guardianship No. 93321055,* 344 Md. at 477, 687 A.2d 681. Section 5–313(a) mandates that a petition for guardianship be filed prior to a petition for adoption. After such petition is filed, the juvenile court must issue promptly "a show cause order that requires the party to whom it is issued to respond as required under the Maryland Rules." § 5–316(a). Maryland Rule 9–105(e) dictates the form that must be utilized for a show cause order, requiring the show cause order to advise the recipient, *inter alia,* that the consequence of the failure to file the objection with the court means that the recipient of the show cause order has "agreed to a termination of [his or her] parental rights." Maryland Rule 9–107(b)(1) requires that, subject to exceptions not applicable in this case, notice of objection to an adoption or guardianship "shall be filed within 30 days after the show cause order is served."

There is no dispute that Kellie B. was properly and timely served, or that her notice of objection was not timely filed. The Petitions and Show Cause Orders were filed on August

---

10. In 2005, the General Assembly passed the Act, with an effective date of January 1, 2006. *See* 2005 Md. Laws, ch. 464, § 7 (SB 710). Among other changes, the Act replaced former Title 5, "Subtitle 3. Adoption and Guardianship With the Right to Consent to Adoption," with: "Subtitle 3. Guardianship to and Adoption Through Local Department; 'Subtitle 3A. Private Agency Guardianship and Adoption;' " and, "Subtitle 3B. Independent Adoption." 2005 Md. Laws, ch. 464, p. 2582–83.

13, 2008, pursuant to §§ 5–313 and 5–316. The Show Cause Orders contained the warnings required by Md. Rule 9–105(e). Kellie B. was personally served on August 26, 2008. On September 30, 2008, five days beyond the deadline provided in Md. Rule 9–107(b)(1), Kellie B. filed her Notice of Objection to the Petitions. Kellie B. conceded in the juvenile court that her objection was untimely, and makes a similar concession in this Court.

The question here presented concerns the viability of the untimely objection. The parties agree that the answer lies in the interpretation of Sections 5–320 and 5–321.[11]

Section 5–320 provides the circumstances for the court's authority to grant a guardianship:

(a) *Consent and acquiescence or best interests.*—A juvenile court may grant guardianship of a child only if:

(1) (i) the child does not object;

(ii) the local department:

1. filed the petition; or

2. did not object to the other party filing the petition; and

(iii) 1. each of the child's living parents consents:

A. in writing

B. knowingly and voluntarily, on the record before the juvenile court; or

C. by failure to file a timely notice of objection after being served with a show cause order in accordance with this subtitle [.]

§ 5–320(a)(1).

Section 5–321 (c), in turn, provides the following with respect to revocation of consent:

_____

11. Maryland Rule 9–102 is the corresponding rule governing consents and revocation of consent. We note here that Md. Rule 9–102(b)(1) suggests that the consent of a parent to a public agency guardianship shall be substantially in the form set forth in Form 9–102.1. Additionally, Md. Rule 9–102(c)(1) states that the applicable time for revocation of consent by the parent is as set forth in FL § 5–321.

(c) *Revocation period; waiver.*—(1) Subject to paragraph (2) of this subsection, a person may revoke consent to guardianship any time within the later of:

(i) 30 days after the person signs the consent; or

(ii) 30 days after the consent is filed as required under this section.

(2) Consent to guardianship under subsection (a)(2) of this section is irrevocable.

§ 5–321(c).

The plain language of § 5–320(a)(1)(iii)(c) instructs that failure to file a timely notice of objection in this case amounts to a consent to guardianship. Turning to § 5–321(c), however, we cannot determine from the plain language whether a consent entered by operation of law is revocable. Subsection 5–321(c)(1) permits revocation of a consent any time within the later of 30 days after a person "signs the consent" or after "the consent is filed as required under this section." *See* § 5–321(c)(1). Subsection 5–321(c)(2), in contrast, provides that a consent to guardianship pursuant to § 5–321(a)(2), *i.e.*, "before a judge on the record," is irrevocable. *See* §§ 5–321(a)(2),(c)(2); *see also* § 5–320(a)(1)(iii)(B) (providing that a party may consent on the record before the juvenile court).

Neither of these provisions speak to a failure to act, and, as the court observed during the motions hearing, § 5–321(c) "sort of indicate[s] that something is done, that there's either a signature of a consent or that something is filed, that there is an act[.]" Indeed, § 5–321(c) simply does not address whether a "deemed consent" is revocable. Even as counsel for BCDSS acknowledges, "[t]he language of the statute, as a whole, makes no reference to deemed consents, and, consequently, the revocation portion of the statute makes no reference to deemed consents."

We conclude, therefore, that it is unclear whether § 5–321(c) applies by its plain language to a "deemed consent", i.e., a consent occurring by failure to timely file a notice of objection to a show cause order. When a statute is ambiguous, we must look beyond plain language to discern the

legislative intent. *Melton v. State*, 379 Md. 471, 477, 842 A.2d 743 (2004). "[W]e resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose." *Barbre v. Pope*, 402 Md. 157, 173, 935 A.2d 699 (2007).

Accordingly, we continue our analysis as the parties have suggested, by considering the opinion of the Court of Appeals in *In re Adoption/Guardianship No. 93321055, supra*, (*"Clemy P."*) concerning the prior consent and revocation of consent provisions of the Family Law Article.

In *Clemy P.*, the Court of Appeals granted certiorari in five separate cases to consider issues relating to untimely objections to show cause orders.[12] In the case of primary concern to the Court, *Clemy P.*, the Department filed petitions for guardianship of Stephon and Alphonso P. in the Circuit Court for Montgomery County on April 21, 1993, to terminate the parental rights of Clemy P. and Sam L. *Id.* at 471, 687 A.2d 681. Sam L. consented to the petition. *Id.* A show cause order was served on Clemy P. on May 11, 1993. *Id.* No objection was filed, and on October 20, 1993, the court granted the petition and entered a judgment of guardianship. *Id.* Clemy P. filed an appeal 32 days later, which was struck by the circuit court as untimely. *Id.*

Eight months later, on July 25, 1994, the children requested a hearing alleging a number of problems after the judgment of guardianship was entered. *Id.* Three days later, Clemy P. moved to intervene. *Id.* at 472, 687 A.2d 681. The Department opposed both the childrens' motion and Clemy P.'s attempt to intervene. *Id.* A status hearing convened on

---

**12.** The Court dismissed three of the five cases as the issues raised therein became moot. *In re Adoption/Guardianship No. 93321055*, 344 Md. at 474–75, 687 A.2d 681. The Court also affirmed the fourth case, concluding there was no error of law or abuse of discretion when the circuit court denied a mother's motion to vacate an enrolled judgment under Maryland Rule 2–535(b). *In re Adoption/Guardianship No. 93321055*, 344 Md. at 476, 687 A.2d 681. Thus, the Court's opinion primarily addressed the fifth of five cases, concerning a circuit court's order granting a motion to revise under Md. Rule 2–535(b), and vacating enrolled judgments of guardianship. *In re Adoption/Guardianship No. 93321055, 344* Md. at 477–86, 687 A.2d 681.

August 11, 1994, but the record did not indicate how these motions were resolved. *Id.*

On July 5, 1995, 21 months after the judgments of guardianship were entered, Clemy P. moved to vacate the judgments. *Id.* She raised a number of contentions: that she was not aware of the need to respond to the show cause order or petition; that she received no notice of any proceedings; and that "the judgments were defective because they were based on her presumed consent and she was never informed of her right to revoke that consent." *Id.* at 473, 687 A.2d 681. The circuit court granted Clemy P.'s motion to vacate the judgments, ruling, as summarized by the Court of Appeals, that "although Clemy may be deemed to have consented to the guardianships by not filing a timely objection, she retained the right to revoke that deemed consent and to receive notice of all further proceedings, including service of all pleadings." *Id.* After the circuit court denied the Department's motion to alter or amend the order vacating the guardianship, the Department appealed. *Id.* at 473–74, 687 A.2d 681.

The Court of Appeals began its analysis by summarizing the procedure generally followed in such cases:

> [A] child may not be adopted without the consent of his natural parents unless the parental rights of those parents have been terminated by a judicial proceeding. It is common for the State, when it concludes that a continuing relationship between a child and his natural parents is likely to be harmful to the welfare of the child, to seek to terminate parental rights as an intermediate measure. A judgment terminating those rights not only eliminates the need for parental consent to a subsequent adoption but also provides the State with flexibility in seeking out adoptive persons or families and in caring for the child in the interim. Most States authorize this intermediate procedure.

*In re Adoption/Guardianship No. 93321055,* 344 Md. at 477, 687 A.2d 681.

In some cases, natural parents may consent to guardianship voluntarily and affirmatively; in other cases, they do not

affirmatively provide their consent. *Id.* at 477–79, 687 A.2d 681. In cases where the parent(s) affirmatively consents to guardianship, the Court observed that § 5–317(e), then in effect, permitted a consenting parent to revoke his or her consent. *See* Md.Code (2004 Repl.Vol.), § 5–317(e) of the Family Law Article (repealed by 2005 Md. Laws, ch. 464, § 2, p. 2584). When the petition was originally filed in Clemy P.'s case, § 5–317(e) allowed a consenting parent to revoke at any time within the earlier of 30 days after the consent was filed, or entry of the judgment of guardianship. *In re Adoption/Guardianship No. 93321055,* 344 Md. at 478, 687 A.2d 681. After 1994, that revocation period was limited to 30 days after the consent was signed. *Id.*

Where the parent does not affirmatively consent to guardianship, the applicable statute provides "that the court, upon the filing of a petition, enter and serve upon the parent a show cause order informing the parent of the petition." *Id.* at 478, 687 A.2d 681 (citing Md.Code (2004 Repl.Vol.) FL § 5–322(a) (repealed by 2005 Md. Laws, ch. 464, § 2, p. 2584)). Further, "[t]he order explains in plain language that the parents have the right to object to the guardianship but that, if they wish to object, they must file their objection with the court by the date set forth in the order." *Id.* at 479, 687 A.2d 681. The Court then cited § 5–322(d), which, at the time the petition was filed in that case, provided:

(d) *Failure to respond or waiver of notification.*—If a person is notified under this section and fails to file notice of objection within the time stated in the show cause order or if a person's notification has been waived under subsection (c) of this section:

(1) the court shall consider the person who is notified or whose notice is waived to have consented to the adoption or to the guardianship; and

(2) the petition shall be treated in the same manner as a petition to which consent has been given.

Md.Code (1991 Repl.Vol.; 1993 Supp.), FL § 5–322(d) (repealed by 2005 Md. Laws, ch. 464, § 2, p. 2584).

Clemy P. suggested that "if the judgment of guardianship was based on her 'deemed' consent under § 5–322(d), she had a right under § 5–317(e) to revoke that consent at anytime prior to entry of the judgment." *In re Adoption/Guardianship No. 93321055*, 344 Md. at 480, 687 A.2d 681. The Court disagreed, stating that Clemy P.'s argument "founders on the erroneous assumption that underlies its major premise." *Id.* at 480–81, 687 A.2d 681. The Court explained:

Section 5–322(d) does not incorporate within it the provisions of § 5–317(e). A deemed consent under § 5–322(d) may not be revoked, for it is not a volitional consent but one arising by operation of law. If the parent fails to file a timely objection, no further notices need be given to the parent, prior to or upon the entry of a judgment of guardianship. This conclusion is clear from both the structure and the history of the relevant statutes and rules.

*In re Adoption/Guardianship No. 93321055*, 344 Md. at 481, 687 A.2d 681.

The Court, in *Clemy P.*, looked to both the legislative history dating from 1982, as well as reports of the Court's Standing Committee on Rules of Practice and Procedure, dating from 1986, in explaining its holding. *In re Adoption/Guardianship No. 93321055*, 344 Md. at 480–86, 687 A.2d 681. In fact, the Court observed, a similar issue was raised in 1987 as a recommendation by the Governor's Task Force to Study Adoption Procedures in Maryland as part of 54 measures "to speed up the process" of having children move from foster care to adoption. *In re Adoption/Guardianship No. 93321055*, 344 Md. at 482, 687 A.2d 681. The Task Force recommended that if a parent who was duly notified failed to file a timely objection to a petition, "the petition shall be treated as one in which consent has been granted." *Id.* The Court explained that "[t]he consequence of failing to file a timely objection was thus to be changed from a waiver of the requirement of consent to a *statutorily deemed consent.*" *Id.* (Emphasis added).

The Court observed that this recommendation was supported by the Maryland Department of Human Resources, as follows:

In its written statement to the General Assembly, the Department observed that many parents, though recognizing that adoption would be in their child's best interest, were nonetheless unable to bring themselves to sign a consent to a termination of their parental rights but chose instead "to simply take no action when served with the show cause order—in effect, to 'allow their child to be taken from them.'" The Department expressed concern about continuing to treat such cases as contested, requiring full evidentiary hearings and delaying the termination process. The bill was also supported by several foster care review boards, which expressed similar concern over the delay in achieving permanence for children in foster care.

*Id.* at 483, 687 A.2d 681.

The Court then looked to subsequent amendments to FL § 5–317(e), which shortened, to 30 days, the time to revoke a written consent. *In re Adoption/Guardianship No. 93321055,* 344 Md. at 483–84, 687 A.2d 681. The Court stated:

In light of this history, it is evident that any construction of § 5–317(e) or § 5–322(d) that would have the effect of engendering further delays or imposing additional impediments to achieving permanent and stable family settings for children placed in foster care, usually as the result of a CINA proceeding, would be flatly inconsistent with and antithetical to the clear legislative purpose, and is to be avoided unless absolutely required.

*In re Adoption/Guardianship No. 93321055,* 344 Md. at 484, 687 A.2d 681.

The Court opined that the 30–day revocation period provided by then § 317(e) was "clear, fixed, and easily ascertained." *In re Adoption/Guardianship No. 93321055,* 344 Md. at 485, 687 A.2d 681. "That certainty would not exist if a right to revoke is attached to the 'deemed' consent under § 5–322."

*In re Adoption/Guardianship No. 93321055,* 344 Md. at 485, 687 A.2d 681. The Court therefore held:

> As a matter of statutory construction, therefore, we conclude that there is no right to revoke a statutory consent arising under § 5–322(d). That is a consent, as we have said, arising by operation of law, not by volition, and it is not within the power of the parent to revoke it.

*In re Adoption/Guardianship No. 93321055,* 344 Md. at 486, 687 A.2d 681; *see also In re Adoption/Guardianship Nos. T00130003 and T00130004,* 370 Md. 250, 261, 805 A.2d 254 (2002) (stating that "FL § 5–322(d) indeed means what it says," and that, "absent some extraordinary circumstance," the juvenile court "has no authority to accept a late-filed objection but must treat the case, as to the non-objecting parent, as though it were uncontested").[13]

## The 2005 Statutory Revisions

As we have noted, §§ 5–317 and 5–322 were repealed in 2005 as part of the adoption of the Act. *See* 2005 Md. Laws, ch. 464, § 2, p. 2584. Revisions to the guardianship and adoption statutes began as a result of assessments by Maryland's Foster Care Court Improvement Project ("FCCIP").[14] *See* Senate Judicial Proceedings Committee, Floor Report on Senate Bill 710 (2005) ("Floor Report"). In a letter from Hon. Pamela L. North, Chair, CINA Subcommittee, FCCIP, to Senate Judicial Proceedings Committee regarding Permanency for Families and Children Act of 2005 (Feb. 18, 2005) ("CINA Subcommittee letter"), the Bill was summarized as follows:

---

13. The Court of Appeals also concluded that consideration of a failure to file a timely objection as an irrevocable deemed consent offended neither due process nor equal protection of law. *In re Adoption/Guardianship No. 93321055,* 344 Md. at 494–96, 687 A.2d 681.

14. The FCCIP "is a federal grant based program focused on improving how the juvenile courts throughout the State are processing their Child in Need of Assistance (CINA) and related termination of parental rights and adoption cases." Floor Report, p. 1.

This bill is intended to separate the statutes regarding termination of parental rights (TPR) and adoption into three discrete areas to clarify the substantive legal distinctions between involuntary termination and voluntary relinquishment of parental rights. The bill includes the legal processes related to a specified procedure to facilitate ease of use. The areas are:

- guardianship to and adoption though [sic] local departments of social services;

- private agency guardianship and adoption; and

- independent adoption.

Floor Report p. 2–3

The purpose of this separation was to "afford judges, masters, practitioners, and others the ability to look in one section and chronologically follow the legal process for the type of proceeding in which they are involved."

CINA Subcommittee Letter, p. 2.

Pertinent to the issue herein, the Floor Report addresses consents to guardianship as follows:

The bill specifies the elements of a valid guardianship petition and clarifies that a petition for guardianship must be filed prior to a child's eighteenth birthday. The bill clarifies the responsibility for adequate notice of the filing of a petition for guardianship and establishes a 30–day time limit for a parent who has consented to guardianship to revoke his or her consent. The 30–day time period is altered to run after the parent signs the consent, or after the consent is filed as required, whichever is later. However, consent to guardianship that is entered into before a judge on the record must include a waiver of the revocation period.

Floor Report, p. 3.

The CINA Subcommittee letter supplements this general description with detailed discussion about the two statutes at issue in this case. With respect to FL § 5–320, Authority to Grant Guardianship, the letter states:

This section rewords the current section on Guardianship Requirements to clarify what is required to grant guardianship. It adds a new provision codifying what is currently practice in some jurisdictions, permitting parties to consent to a guardianship conditional on the child being adopted into a specific family, provided that the family is ultimately approved for adoptive placement. This practice has increased the timeliness of attaining permanency for children who have parents who are willing to consent if a particular family (often a relative) adopts the child. The ability to exercise this condition ends at the time of adoption which ensures that no adoptions will be disrupted by the addition of this provision.

CINA Subcommittee Letter, p. 5.

With respect to FL § 5–321, Consent, the letter provides:

This section defines the parameters surrounding consenting to the granting of a guardianship petition. A provision has been added to ensure that parents who consent are advised about the consent in a language understood by the parent. It provides for what is to occur if a parent consents prior to the filing of the petition, as well as what should occur if the parent consents after the filing of the petition. The local department is now required to file the consent with the court with copies to all parties. The revocation period provision is revised so that it begins to run based on the time of the filing of the consent with the court, instead of beginning to run at the time that the parent signs the consent, and provides for waiver of revocation if the consent to guardianship is made before a judge on the record. This section also addresses what is to occur if the condition of a conditional consent is not fulfilled.

CINA Subcommittee Letter, p. 5.

▇ We have not discovered anything in the legislative history of the amended statute to suggest that the Legislature meant to undermine or alter the holding of *In re Adoption/Guardianship No. 93321055*, when it repealed §§ 5–317(e) and 5–322(d), and enacted new provisions with respect

to consent to guardianship and revocation of consent. Kellie B. asserts, however, that, "[a]ccording to the wording of the current statute, a non-response, a failure to file a timely Notice of Objection, is as much a voluntary consent as is a written consent or a knowing and voluntary consent on the record before the juvenile court." That contention is rebutted by the Committee Note to Section 5–320, which provides:

Subsection (a)(1)(iii)(1) of this section is derived from former FL § 5–317(c)(2), as it related to CINAs, and revised to delineate the methods by which consent may be given in addition to failure to make timely objection. *Subsection (a)(1)(ii)(1) is not meant to change the current meaning of "deemed consent ".*

Committee Note, 2005 Md. Laws, ch. 464, § 3, p. 2617 (emphasis added).[15] We cannot, therefore, find merit in Kellie B's proposition that her conceded failure to file a timely objection was "volitional."

Kellie B. also asserts that, because the Legislature specifically provided in § 5–321(c) that: (1) consent may be revoked within the later of 30 days after the consent is signed or filed; but that, (2) consent entered into before a judge is irrevocable, according to the doctrine of *expressio unius est exclusio alterius,* the statute now provides the sole "exception to the general rule" permitting revocation of consent. *See WFS Financial, Inc. v. Mayor & City Council,* 402 Md. 1, 14, 935 A.2d 385 (2007) ("the expression of one thing is the exclusion of another"); *accord Chow v. State,* 393 Md. 431, 458 n. 17, 903 A.2d 388 (2006).

The Court of Appeals has explained this maxim as follows: [t]he maxim 'expressio unius est exclusio alterius' ... meaning that the expression of one thing implies the exclusion of

---

15. Former Section 5–317(c)(2) provided that "except as provided in § 5–313 and 5–313.1 of this subtitle, the court may grant a decree awarding guardianship only: ... (2) with the consent of each living natural parent of the child." Md.Code (2004 Repl. Vol.), § 5–317(c)(2) of the Family Law Article (repealed by 2005 Md. Laws, ch. 464, § 2, p. 2584).

another thing not mentioned, is not a rule of law, but merely an auxiliary rule of statutory construction applied to assist in determining the intention of the Legislature where such intention is not manifest from the language used. It should be used with caution, and should never be applied to override the manifest intention of the Legislature or a provision of the Constitution. . . .

*Walzer v. Osborne,* 395 Md. 563, 579, 911 A.2d 427 (2006) (citation omitted); *see also Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 383–86, 697 A.2d 424 (1997) (construing statute omitting termination of employment as a specific ground to recall a police certification to allow automatic revocation of certification upon termination).

Our examination of the legislative history of the Act leads us to conclude that the Legislature did not intend to permit revocation of consents entered by operation of law. Further, we observe that FL § 5–321(c)(2), providing that a consent entered before a judge, on the record, is irrevocable, complements FL § 5–321(a)(2), which provides that "[c]onsent to guardianship before a judge on the record shall include a waiver of a revocation period."

■ We also disagree with the notion that, because FL § 5–321(c) does refer to deemed consents that the General Assembly must have purposefully excluded such consents in order to cause them to be revocable. "The Legislature is presumed to be aware of [ ] prior [appellate] holdings when it enacts new legislation and, where it does not express a clear intention to abrogate the holdings of those decisions, to have acquiesced in those holdings." *Allen v. State,* 402 Md. 59, 72, 935 A.2d 421 (2007) (citations omitted); *see also Taylor v. Mandel,* 402 Md. 109, 131, 935 A.2d 671 (2007) (stating that "we presume that the Legislature has acted with full knowledge of prior and existing law, legislation and policy").

■ Although there were substantive revisions in the 2005 legislation relating to termination of parental rights, guardianship and adoption, *see* 2005 Md. Laws, ch. 464, p. 2581, the

changes to the specific statutes at issue here, concerning revocation of consent to guardianship, were a matter of recodification, rather than substantive revision. Moreover, the Committee Note for FL § 5–320(a)(1)(iii)(1) carries the message that the revision was "not meant to change the current meaning of 'deemed consent'". *See* Committee Note, 2005 Md. Laws, ch. 464, § 3, p. 2617. Further, the Committee Note to FL § 5–321(c)(1) indicates that "this section is derived from former FL § 5–317(e) and revised to provide an alternative deadline based on the filing date of the consent." *See* 2005 Md. Laws, ch. 464, § 3, p. 2620. These changes do not suggest that consents by operation of law may now be revoked, in contravention of the holding of *In re Adoption/Guardianship No. 93321055, supra.* As the Court of Appeals has explained elsewhere:

> [R]ecodification of statutes is presumed to be for the purpose of clarity rather than change the meaning and, thus, even a change in the phraseology of a statute by a codification will not ordinarily modify the law unless the change is so radical and material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code.

*Allen,* 402 Md. at 71–72, 935 A.2d 421 (citations omitted).

 In sum, we find nothing in the amended statute that causes us to believe that the rationale applied by the Court in *In re Adoption/Guardianship No. 93321055, supra,* does not continue to apply with equal force to the 2005 revisions to Maryland's guardianship and adoption laws. We hold that, as a matter of statutory construction, there remains no right to revoke a statutorily deemed consent entered by operation of law.

Accordingly, we conclude that the juvenile court's construction of the 2005 revisions was legally correct, and that the court did not err in granting BCDSS's motion to strike Kellie B.'s untimely Notice of Objection.

JUDGMENTS OF THE CIRCUIT COURT FOR BALTI-
MORE CITY, SITTING AS A JUVENILE COURT, AF-
FIRMED; COSTS TO BE PAID BY APPELLANT.