888 A.2d 1201

**In re ADOPTION/GUARDIANSHIP OF JOSHUA M.**

**No. 82 Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Dec. 23, 2005.

342

Nenutzka C. Villamar (Nancy A. Forster, Public Defender, on the brief), Baltimore, for Appellant.

C.J. Messerschmidt ( J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: HOLLANDER, DEBORAH, S. EYLER, and WOODWARD, JJ.

WOODWARD, Judge.

This appeal concerns Joshua M., the biological child of appellant, Rita M. Joshua was born on October 4, 1999. He has been in the care of the Prince George's County Department of Social Services ("PGDSS") since February 4, 2002. On October 4, 2004, the Circuit Court for Prince George's County, sitting as a juvenile court, entered judgment denying PGDSS's petition to terminate appellant's parental rights. On February 28, 2005, upon motion by PGDSS to alter or amend the October 4, 2004 judgment, and following a hearing, the court amended its October 4, 2004 judgment, and granted PGDSS's petition to terminate appellant's parental rights. Appellant filed a motion to alter or amend the February 28, 2005 judgment and/or reopen case and to revise judgment. That motion was denied without a hearing.

Appellant presents two questions for our review, which we have slightly re-phrased:

I. Whether the trial court erred in granting PGDSS's motion to alter or amend judgment and ultimately terminate appellant's parental rights based, in part, on facts that occurred after the entry of the original judgment on October 4, 2004.

II. Whether the trial court abused its discretion by refusing to hold a hearing on appellant's motion to alter or amend the February 28, 2005 judgment.

For the reasons stated herein, we shall affirm the judgment of the trial court.

## BACKGROUND

### Facts And Proceedings Prior To August 25, 2004

Appellant is the natural mother of Joshua. Joshua was born prematurely on October 4, 1999. He has three siblings, including a twin brother, Justin, all of whom have been removed from appellant's care.[1] The father of Joshua is unknown.[2]

Appellant has a history of alcohol and drug abuse, and was using illegal drugs while she was pregnant with Joshua. At the time Joshua was born, he tested positive for cocaine. Joshua suffers from a host of medical problems including hypotonia, cerebral palsy, severe gastroesophageal reflux that necessitates a feeding tube, breathing ailments, as well as other disorders and developmental delays.[3] Joshua requires intensive physical therapy, daily doses of oxygen, assistance ambulating, and near constant supervision and care.[4]

Joshua has twice been adjudicated by the Circuit Court for Prince George's County as a child in need of assistance ("CINA"). The first occasion was in 2001, and the second in 2002. In both cases, the court found that appellant failed to

---

1. Joshua's three siblings are in the custody and care of relatives.

2. Appellant has suggested that one of two men might be the father of Joshua. One, Harry M., denied paternity in CINA 01–0008. The other man, Peter C., was served in North Carolina and notified of the proceedings in compliance with Maryland Code (1984, 2004 Repl. Vol.), Family Law Article ("FL") section 5–322(d). He never responded. Under FL § 5–322(d), Peter C. is deemed to have consented to PGDSS's petition to terminate his parental rights. *See In re Adoption/Guardianship No. 93321055*, 344 Md. 458, 476, 687 A.2d 681 (1997).

3. Joshua's medical problems also include bronchial pulmonary dysplagia, nissen funaoplicatory, allergic rhinitis, failure to thrive, and metabolic alkolosis.

4. Joshua requires nebulyzer treatments six times per day. He is dependent on leg braces and is not toilet trained.

supervise Joshua and address his medical and developmental needs. The court further determined that appellant's long-standing substance abuse issues diverted her focus from the chronic needs of her children.

On February 4, 2002, Joshua was removed from appellant's care as a result of neglect. On that date Joshua, and his twin brother were found by police officers alone and unattended to in the apartment that they occupied with appellant. The children were dirty and in need of fresh diapers. Since that time, Joshua has been in the care of the same foster family. Although Joshua's foster parents are willing to continue providing care for him, they are not interested in adopting him.

Since Joshua was committed to the care of PGDSS in 2002, appellant's visits with him have been infrequent. Appellant has not attended Joshua's medical appointments, and she has not been in communication with Joshua's foster parents regarding Joshua.

Between February 2002 and July 2004, appellant and PGDSS executed four service agreements under which appellant was required to participate in in-patient substance abuse counseling and treatment programs, as well as parenting classes focused on special needs children. Although appellant participated in various out-patient substance abuse programs, she never successfully completed any of those programs. There is indication that on at least two occasions, appellant's failure to comply with the provisions of her service agreement occurred as a result of her being incarcerated.[5]

On December 9, 2003, PGDSS filed a petition for guardianship of Joshua, with the right to consent to adoption or long-term care short of adoption. On August 4, 5, and 25, 2004, the circuit court, sitting as a juvenile court, held a hearing on PGDSS's motion to terminate appellant's parental rights with respect to Joshua.

---

5. Appellant was incarcerated in Fairfax County, Virginia for a period of one month in September 2002, and for six months beginning in January 2004.

*Facts And Proceedings After August 25, 2004*

On October 4, 2004, the circuit court ruled that it was not in Joshua's best interest to terminate appellant's parental rights. In so determining, the court acknowledged that appellant had abstained from drugs for eight months, and that she had a new husband who supported her financially and who had expressed a willingness to provide for both her and Joshua. However, in denying PGDSS's petition, the court stated:

> [T]he Court does not find that it is in Joshua's best interest to be returned to [appellant] at this time. Until [appellant's] history of substance abuse and relapses are appropriately addressed by in-patient treatment, there is little likelihood that she could provide a safe and productive environment for Joshua.

The court further ordered that appellant continue and complete all recommended substance abuse treatment programs, remain abstinent from drugs, and sign releases permitting PGDSS to monitor her progress in treatment. PGDSS was ordered to provide liberal, bi-weekly, supervised visitation between appellant and Joshua, provide or make referrals for appellant for in-patient substance abuse treatment, as well as after-care, and arrange for parenting classes focused on caring for a special needs child.

On October 15, 2004, eleven days after the court entered judgment denying PGDSS's petition, PGDSS filed a Motion for New Trial, to Alter or Amend Judgment, and/or Reopen Case and to Revise Judgment. By way of its motion, PGDSS asserted that: (1) appellant was no longer participating in drug treatment; (2) appellant failed to attend five group sessions in August 2004 and all six sessions in September 2004; (3) appellant's last urinalysis test was August 10, 2004; (4) appellant had failed to return telephone calls from drug treatment providers regarding in-patient treatment; and (5) appellant was "out of town." In opposition to PGDSS's motion, appellant responded that she was in North Carolina because of life threatening illnesses to her father and sister, both of whom died on October 17, 2004, that she would return

to Maryland in November, and that she would submit to in-patient treatment at that time.

On December 15, 2004 and January 25, 2005, the court held a hearing on PGDSS's motion to alter or amend judgment. During that hearing the court considered evidence offered by both parties from August 25, 2004 through January 19, 2005.[6]

On February 28, 2005, the court issued an amended order and decision granting PGDSS's request to alter or amend judgment. The court adopted and incorporated findings from its original decision on October 4, 2004, and made the following additional findings based on evidence of facts occurring from August 25, 2004 through January 19, 2005:

36. Since the August 25, 2004 hearing, [appellant] ceased her sessions with Gaudenzia, Inc., and has not engaged in any formal drug treatment program.

37. Between August 25, 2004 and December 21, 2004, [appellant] did not visit or otherwise attempt to arrange any visits with Joshua, nor did she communicate with Joshua's foster parents, ... who have cared for Joshua for three years, regarding his well-being.

38. [Appellant] received a communication from her brother at the end of September 2004, that her father and sister were ill with cancer. She went to North Carolina to be with them until their untimely death in October 2004. She remained in North Carolina through November 2004. [Appellant] did not notify [PGDSS] of her intention to travel to North Carolina nor the duration of her stay.

39. [Appellant] admitted that during her stay in North Carolina she smoked crack cocaine on more than one occasion.

40. Under the terms and conditions of [appellant's] probation, she was subject to weekly urinalysis. [Appellant], however, did not submit to urinalysis between August and November 10, 2004.

---

6. January 19, 2005 is the date of the latest finding of fact made by the court.

41. [Appellant] was assigned to Ms. Michelle Alston, her probation agent in the District of Columbia on September 22, 2004. However, Ms. Alston did not meet [appellant] until November 10, 2004. [Appellant] tested positive for cocaine on November 16, 18 and December 9, 2004.

42. [Appellant] stated that she had attended AA/NA meetings at the Reeves Center in the District of Columbia since the August 2004 hearing, but provided no supporting documentation.

43. [Appellant] missed several group sessions through Gaudenzia, Inc. There is no evidence that [appellant] submitted to urinalysis testing between the one on August 10, 2004 and the one on November 10, 2004. She tested positive for cocaine on November 16, 2004, November 18, 2004 and December 9, 2004, but tested negative on November 23, 2004, November 30, 2004 and December 2, 2004. [Appellant] did not attend any formal substance abuse treatment programs between August 10, 2004 and December 2004.

44. [Appellant] declined an opportunity on August 27, 2004, to observe Joshua at school. A letter from [PGDSS], regarding other possible school visits received no response from [appellant] until November 2004.

45. [Appellant] did not visit Joshua from the end of August 2004 to December 2004. [Appellant] failed to appear for a visit with Joshua on December 7, 2004. She later advised [PGDSS] that she forgot.

46. Since the August hearing, [PGDSS] located five possible in-patient treatment facilities and several parenting programs to address Joshua's special needs. However, [PGDSS] subsequently learned that [appellant] could not avail herself of those programs due to her District of Columbia residency.

47. [PGDSS's] permanency plan for Joshua is adoption. However, they have yet to secure the appropriate adoptive match, but continue to monitor local and national adoption registries.

48. Efforts by [PGDSS] to facilitate reunification between Joshua and [appellant] since August 25, 2004, have not achieved success. A scheduled visit between [appellant] and Joshua occurred on August 27, 2004. [Appellant] did not seek visitation again until November 30, 2004. The next scheduled visitation was December 7, 2004. She was reportedly in North Carolina with her dying father and sister through November 2004. [Appellant] did not contact [PGDSS] to check on Joshua's welfare during her North Carolina visit. Since the December 7, 2004 visit, [appellant] visited Joshua on December 22, 2004, January 5 and 19, 2005.

49. [Appellant's] probation agent in the District of Columbia, Michelle Alston, communicated to [PGDSS] that [appellant] was on a waiting list for in-patient substance [abuse] treatment, possibly with the RAP program. The duration of such a program, should it become available, is unknown.

50. In August 2004, [appellant] applied for food stamps and related benefits during her son Justin's brief visit with her. She received $249.99 in cash and $265.00 in food stamps. These benefits were received by her for the months of August and September 2004. Justin, however, did not remain in [appellant's] care for this period. There is no evidence regarding how [appellant] utilized those benefits.

51. Subsequent to [appellant's] release from incarceration in June 2004, she was assigned a probation agent in Fairfax County, Virginia. The probation was transferred to the District of Columbia in and around August 2004. However, [appellant] did not report to the newly assigned agent, Ms. Austin (sic), until after her return from North Carolina in November 2004.

In consideration of all of its findings, the court concluded:

[Appellant's] contacts with Joshua between 2002 and 2004 were sporadic, but she visited with him between her release from incarceration in June 2004 and August 2004. She has the capacity to provide for Joshua's medical and other

needs, but not the will or the drive to overcome her addiction. Neither [appellant] nor [PGDSS] have provided the opportunity for Joshua to maintain contact with his siblings, Kayla and Jonathan, or his twin brother, Justin. Joshua has no emotional ties with them or his mother. Tragically, [appellant's] addiction has both created and perpetuated this reality for Joshua and his siblings.

Parenting is an awesome responsibility, particularly for a special needs child. [Appellant's] desire for drugs consumes her life, leaving no room for the task of providing stability for Joshua. Regrettably, [PGDSS's] request to alter/amend judgment must be granted and the parental rights be terminated.

It is unfortunate that the link between Joshua and his siblings never really developed. Any link between Joshua and his father is non-existent. [Appellant] was the last link. She never developed the opportunities for a bond to grow between her and Joshua. Her addiction became the centerpiece of her existence. Joshua can wait no longer. It is in his best interests to terminate the rights of his parents. [PGDSS's] request to alter/amend judgment is hereby granted.

Thereafter, on March 9, 2005, appellant filed a motion to alter or amend judgment and/or reopen case and revise judgment. By way of her motion, appellant asserted, *inter alia,* that she was enrolled in an in-patient drug treatment program, that she was drug-free, and that her prognosis was very good. She requested a hearing to present additional evidence. PGDSS did not oppose the motion. On March 18, 2005, the court denied appellant's motion without a hearing. This appeal followed.

## DISCUSSION

### (I)

### Standard of Review

In resolving the issue of whether the trial court erred in granting PGDSS's motion to alter or amend the October 4,

2004 judgment based, in part, on facts that occurred after the entry of that judgment, we must first determine what standard guides our review. Although not expressly stated, the parties set forth two separate standards of review. Specifically, appellant attempts to draw a bright-line rule by arguing it was legal error for the trial court to admit evidence of facts that occurred after the entry of judgment on October 4, 2004. Appellee responds that the trial court properly exercised its discretion in receiving the additional evidence of facts that arose after October 4, 2004, and ultimately entering a new judgment. Both parties agree that the trial court was within its rights to consider evidence of facts that occurred between the last day of the trial, August 25, 2004, and the entry of judgment on October 4, 2004.

 Our review of the trial court's decision to grant appellee's motion to alter or amend judgment under Maryland Rules 2–534 and 2–535(a) is governed by the abuse of discretion standard. *See Renbaum v. Custom Holding, Inc.*, 386 Md. 28, 46, 871 A.2d 554 (2005) (holding the circuit court did not abuse its discretion in granting a motion to alter or amend judgment based on a consideration of additional admissible evidence); *Tierco Maryland, Inc. v. Williams*, 381 Md. 378, 398, 849 A.2d 504 (2004) (interpreting Md. Rule 2–532, but explaining that Rule 2–534 accords trial courts wide discretion to open a judgment to receive additional evidence, and amend or alter the judgment and findings); *see also* Paul V. Niemeyer *et al., Maryland Rules Commentary* 456 (3d ed. 2003). "Before finding an abuse of discretion we would need to agree that, 'the decision under consideration [is] well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.' " *Renbaum*, 386 Md. at 43, 871 A.2d 554 (quoting *In re Yve S.*, 373 Md. 551, 583–84, 819 A.2d 1030 (2003)).

### Additional Evidence

██ Appellee's motion to alter or amend was filed pursuant to Maryland Rule 2–535. Maryland Rule 2–535(a) states: "On motion of any party filed within 30 days after entry of

judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534." Under Maryland Rule 2–534,

> [i]n an action decided by the court, ... the court *may open the judgment to receive additional evidence,* may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. ...

(emphasis added).

In *Renbaum,* the Court of Appeals, for the first time, addressed the scope of the "additional evidence" that may be received by the trial court and relied upon in granting a motion to alter or amend judgment under Rule 2–534. *See Renbaum,* 386 Md. at 43–46, 871 A.2d 554. *Renbaum* involved a petition for involuntary dissolution of a closely held Maryland corporation. *Id.* at 32, 871 A.2d 554. Two brothers, Michael and Barry, were the sole shareholders, employees, and officers of the corporation. *Id.* at 32–33, 871 A.2d 554. Michael and his wife and Barry and his wife constituted the members of the board of directors. *Id.* at 35, 871 A.2d 554. Michael sought dissolution primarily because the board of directors was allegedly deadlocked over whether dividends should be declared. *Id.* at 37, 871 A.2d 554. A two-day trial on the merits of the petition was conducted by the circuit court, and on March 27, 2003, the court rendered an oral opinion from the bench denying the petition because, *inter alia,* Barry testified that he was willing to vote for a dividend distribution. *Id.* at 38–39, 871 A.2d 554.

The judgment, however, was not entered until May 7, 2003. *Id.* at 39, 871 A.2d 554. Between March 27, 2003 and May 7, 2003, Michael attempted, unsuccessfully, to have the board of directors approve a dividend distribution. *Id.* at 40, 871 A.2d 554. Barry and his wife were unable to attend a special meeting of the board and refused to sign a form consenting to the dividend distribution. *Id.* Michael then filed a motion to

alter or amend the May 7, 2003 judgment, pursuant to Rule 2–534, asserting that the deadlock among the directors persisted despite Barry's in-court testimony that he would vote for the dividend distribution. *Id.*

The circuit court held a hearing, granted Michael's motion to re-open the May 7, 2003 judgment, and on a later date received additional evidence on " 'additional issues that arose after the hearing in March....' " *Id.* The court then granted the petition for involuntary dissolution, stating that because of the impasse "the issue with dividends would never come to a resolution." *Id.* at 41, 871 A.2d 554.

The Court of Appeals framed the issue regarding Rule 2–534 as follows:

> I. Did the trial court abuse its discretion in granting the post-judgment motion on the basis of operative facts distinct from and occurring subsequent to those addressed at trial.

*Id.* 386 Md. at 33, 871 A.2d 554. Barry contended that Rule 2–534 is an analog to Federal Rules of Civil Procedure 52(b) and 59(a), and "like its federal counterpart, Rule 2–534 is 'confined to evidence existing at the time of trial.' " *Id.* at 44, 871 A.2d 554. As such, according to Barry, the trial court could not rely on evidence of Michael's post-trial efforts that failed to produce a dividend distribution in granting the Rule 2–534 motion. *See id.*

The Court of Appeals rejected Barry's argument, stating that Rule 2–534 is "more expansive" than the federal rules and that "the Circuit Court retains almost a full measure of its discretion regarding a motion filed [under Rule 2–534]." *Id.* at 44, 45, 871 A.2d 554. The Court observed that the new evidence arose after the trial and the court's oral opinion on March 27, 2003, but before the entry of the judgment on May 7, 2003. *Id.* at 45–46, 871 A.2d 554. The Court concluded by holding: "After the 7 May judgment was opened ..., the Circuit Court was free to consider additional admissible evidence in the matter. The Circuit Court did not abuse its discretion in granting Michael's motion to alter or amend judgment." *Id.* at 46, 871 A.2d 554.

In the case *sub judice*, appellant urges us to view *Renbaum* as establishing a bright-line rule that precludes a trial court from considering evidence of facts occurring after the entry of judgment in deciding a motion to alter or amend under Rule 2–534. Because in granting PGDSS's motion to alter or amend the trial court relied on facts arising not only between the last day of trial, August 25, 2004, and the date of the entry of judgment, October 4, 2004, but after the date of the entry of judgment, appellant claims that the trial court committed reversible error. Appellee responds that the trial court did not abuse its discretion when it considered the post-judgment evidence, because that evidence was inextricably intertwined with the evidence arising between the trial and the entry of judgment. Moreover, adopting a bright-line rule is inappropriate, in appellee's view, "lest technicality triumph over justice." *Fritz v. Fritz*, 34 Md.App. 600, 602, 368 A.2d 502, 503 (1977) (citations omitted).

We do not view *Renbaum* as establishing the bright-line rule suggested by appellant. First, the "additional evidence" involved in *Renbaum* consisted of only facts occurring between the trial date and the date of entry of judgment. No facts occurring after the date of entry of judgment were offered to or relied upon by the trial court. Secondly, while the Court of Appeals did state that "[t]he key date for the purposes of proper analysis of this issue is the date of entry of judgment," the rationale underlying its holding was:

> As Rule 2–534 indicates, *the Circuit Court retains almost a full measure of its discretion* regarding a motion filed within ten days following the entry of judgment. Rule 2–534 is simply a measure by which, in this case, one party brought to light additional evidence that may cause the trial judge to enter a different more appropriate judgment.

*Renbaum*, 386 Md. at 45–46, 871 A.2d 554 (emphasis added). This "full measure" of discretion accorded to the trial court to consider "additional evidence" is consistent with the intent of the drafters of Rule 2–534. *See* Minutes of the Standing Committee on Rules of Practice and Procedure, September 11, 1981, at 3 ("Rule [2–534] should serve as a vehicle for permit-

ting the court to receive additional evidence and to take whatever action it would have taken had an entire new trial been granted, ..."). Lastly, in stating its holding, the Court of Appeals did not place any temporal limitation on the permissible "additional evidence" that may be considered by the trial court under Rule 2–534. The Court simply said that, after the judgment was opened, "the Circuit Court was free to consider additional admissible evidence in the matter." *Id.* at 46, 871 A.2d 554.

When it entered judgment denying PGDSS's petition in the instant case on October 4, 2004, the trial court, nevertheless, determined that it was not in Joshua's best interest to be returned to the custody of appellant until appellant "appropriately addressed" her substance abuse problem. The court ordered that appellant "is to continue and complete all recommended substance abuse treatment programs, and is to remain abstinent as shown by frequent and random urinalysis." The court also ordered PGDSS to provide liberal and supervised visitation between Joshua and appellant, at least biweekly.

In its motion to alter or amend the October 4, 2004 judgment, filed on October 15, 2004, PGDSS informed the court that appellant was no longer in outpatient substance abuse treatment, having stopped attending group sessions and submitting to urinalysis. PGDSS also told the court that appellant could not be referred to an in-patient substance treatment program because she was "out of town." Based on this information, the court scheduled a hearing to consider all relevant evidence. During the hearings held on December 15, 2004 and January 25, 2005, the court received evidence from both parties regarding the issues raised at trial and in PGDSS's motion.

On February 28, 2005, the circuit court entered an Amended Decision and Order granting PGDSS's petition and, in support thereof, set forth the aforementioned additional findings of fact. It is clear from these additional findings that the court considered the time periods before and after the date of entry

of judgment, October 4, 2004, as one time period from the last day of trial, August 25, 2004 to January 19, 2005. Moreover, these additional findings demonstrate that the facts occurring after the date of entry of judgment were inextricably intertwined with the facts arising between the trial date and the date that judgment was entered. For example, the trial court found that *both before and after the October 4, 2004 judgment:* (1) appellant had ceased her outpatient drug treatment program and had not engaged in any formal drug treatment program (Finding No. 36); (2) appellant did not visit or attempt to visit with Joshua, nor did she communicate with Joshua's foster parents (Finding No. 37); (3) appellant went to North .Carolina and stayed there approximately two months without notifying PGDSS of her intention to travel or the duration of her stay (Finding Nos. 38 & 48); (4) appellant did not submit to urinalysis (Finding No. 40); (5) appellant declined or never responded to opportunities to visit Joshua at school (Finding No. 44); (6) appellant did not visit with Joshua (Finding Nos. 45 & 48); and (7) appellant did not report to her District of Columbia probation agent after being assigned in September 2004 (Finding Nos. 41 & 51).

In addition, the court considered facts occurring after the October 4, 2004 judgment that were directly related to facts arising before the judgment. Appellant admitted that, during her stay in North Carolina, she smoked crack cocaine on more than one occasion (Finding No. 39). She also tested positive for cocaine on November 16, 18, and December 9, 2004 (Finding Nos. 41 & 43). These facts were relevant to appellant's discontinuing her drug treatment program, stopping visits with Joshua, and ceasing contact with PGDSS, all of which occurred prior to October 4, 2004.

 We hold that Rule 2–534 accords the trial court discretion to consider admissible evidence of facts occurring after the date of entry of judgment when those facts are directly related to relevant facts arising between the date of trial and the date of entry of judgment. Therefore, the trial court in the case *sub judice* did not abuse its discretion when it

granted PGDSS's motion to alter or amend the judgment and ultimately terminate appellant's parental rights based, in part, on evidence of facts that occurred after the entry of the original judgment on October 4, 2004.

## (II)

### *Refusal To Hold A Hearing*

■ In what appears to be an alternative argument, appellant asserts that the trial court abused its discretion in refusing to hold a hearing on her Motion to Alter or Amend Judgment and/or Reopen Case and to Revise Judgment that was filed in response to the court's order of February 28, 2005, terminating her parental rights. Appellant asserts that she was entitled to a new hearing on her motion primarily because: (1) she enrolled in an in-patient drug treatment program on February 2, 2005, and has actively engaged in both individual and group therapy; (2) her urine tests were negative for the presence of alcohol and drugs; (3) appellant's husband was actively supporting her rehabilitative efforts; (4) she was in compliance with the terms of her probation; and (5) her prognosis was very good. PGDSS counters that the trial court properly exercised its discretion in denying appellant's motion without a hearing.

■ Maryland Rule 2–311(e) provides:

(e) **Hearing—Motions for judgment notwithstanding the verdict, for new trial, or to amend the judgment.** When a motion is filed pursuant to Rule 2–532, 2–533, or 2–534, the court shall determine in each case whether a hearing will be held, but it may not grant the motion without a hearing.

"[A] hearing is mandated only if the court grants the motion. The court determines in each case whether a hearing will be granted, ..." Niemeyer, *supra*, at 456. Thus a court is not required to hold a hearing prior to denying a motion under Rule 2–534.

In the instant case, the court's findings of fact clearly demonstrate that as soon as the trial concluded on August 25, 2004, appellant reverted to her old ways by discontinuing drug treatment, failing to appear for visitation with Joshua, and using illegal drugs. Simply stated, the evidence proffered by appellant was insufficient to warrant a hearing on her motion to alter or amend. Accordingly, the trial court did not abuse its discretion in declining to hold a hearing prior to denying appellant's motion under Rule 2–534.

**JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.**