42 A.3d 722

**In re ADOPTION OF SEAN M.**

**No. 1836, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

April 27, 2012.

Philip J. Sweitzer, Baltimore, MD, for appellant.

Thomas F. Ellis, III, Annapolis, MD, for appellee.

Panel: EYLER, DEBORAH S., ZARNOCH, and BERGER, JJ.

BERGER, J.

This case concerns the stepparent adoption of a minor child, Sean M. ("Sean"). Appellant William H., Sean's purported father ("Father") filed an objection to the stepparent adoption, but did so beyond the time provided by the juvenile court's show cause order. Appellant Jeffrey K. ("Stepfather") moved to strike the late objection, and the Circuit Court for Queen

Anne's County granted the motion. Following the order to strike, Father filed motions to alter and amend judgment and to stay adoption proceedings, both of which the circuit court denied. This timely appeal followed.

Father presents two issues for our review, which we have rephrased as follows:

I. Whether a natural parent's failure to file a timely objection to a proposed independent adoption, as directed in a show cause order, constitutes an irrevocable consent to the adoption.

II. Whether the statutory scheme resulting in an irrevocable deemed consent to an independent adoption offends the due process rights of the parent.

For the reasons set forth below, we affirm the judgment of the Circuit Court for Queen Anne's County.

## FACTUAL AND PROCEDURAL BACKGROUND

Sean, the minor child who is the subject of this case, was born on June 16, 2009, to Moira K., his mother ("Mother"). Mother and Father, an attorney licensed to practice in the State of Maryland, were in a romantic relationship during April through November of 2008. Shortly after Sean's birth, on July 14, 2009, Mother filed a custody action against Father in the Circuit Court for Anne Arundel County, alleging that "William [H.] is the natural father of the minor child." Mother sought sole legal and physical custody of Sean. In his answer to the complaint, Father denied that he was Sean's natural father, and the custody case was ultimately dismissed by the agreement of the parties.

· Since his birth, Sean has resided exclusively with Mother. Since Mother and Stepfather's marriage on October 16, 2010, Sean has resided with both Mother and Stepfather. Additionally, Stepfather has been involved with Sean's life on a daily basis since Sean was born. Mother asserts that, as of the time the instant action was filed, Father had not been involved with Sean since his birth, had not attempted to establish paternity, and had not attempted to assert any parental

rights.[1] Having been involved with Sean since his birth and intending to remain in a parental role, Stepfather filed a Petition for Stepparent Adoption of a Minor on March 30, 2011. Mother consented to Stepfather's adoption of Sean, and filed a Consent to Adoption without Termination of Parental Rights.

> The Petition for Stepparent Adoption stated in paragraph 7:
>
> That the natural father of the minor child has not been identified; no persons alleging to be the natural father of the minor child have come forward; and no natural father is listed on the minor child's birth certificate. However, in July, 2009 the natural mother of the minor child, Moira . . . filed a Complaint for Custody against William . . .; case number C–09–142875 in the Circuit Court for Anne Arundel County, Maryland. The Complaint and case was [sic] dismissed by the parties on or about January 21, 2010. . . .

The Petition for Stepparent Adoption also noted that, "the natural father of the child is not joining in the present petition." In paragraph 10, the Petition stated:

> That if William . . . is the natural father of the minor child, he has abandoned his parental rights to the minor child, Sean, for the following reasons:
>
> I. He denied that he is the natural father of the minor child in his Answer to Complaints which was filed under oath with this Honorable Court. . . .
>
> II. He has not exercised any parental rights since the minor child's birth;
>
> III. He has not attempted to make any contact with the minor child, has not contacted the minor child by telephone, letters, cards, gifts, or in any way made an effort to see the minor child since birth;
>
> IV. He has not attempted to contribute financially or otherwise to the support and maintenance of the minor child.

---

**1.** Father does not appear to rebut these assertions.

The Petition further states, in paragraph 12, that "[i]t is in the best interests of the minor child, Sean, that the parental rights of William . . ., or any other person who may allege to be the natural father of the minor child, be terminated." Along with the Petition, Stepfather, through counsel, filed a Line requesting that the court file "a Show Cause Order and Notice of Objection to William . . ., who is the person suspected of being the natural father to the minor child to be adopted in the above captioned matter." On April 15, 2011, the court issued a show cause order and notice of objection to Father, and Father was properly served by personal service on April 29, 2011.

The show cause order stated, in pertinent part (emphasis in original):

RELATIONSHIP TO POTENTIAL ADOPTEE: **[Purported] FATHER**

You are hereby notified that:

1. A Petition has been filed for the adoption of Sean . . ., who was born on June 19, 2009 in Queen Anne's County, Maryland.

2. If you wish to object to the adoption(s), you must file a notice of objection with the Clerk of the Court at Circuit Court for Queen Anne's County . . . **within thirty (30) days** after this Order is served on you. For your convenience, a form notice of objection is attached to this Order.

**WHETHER THE PETITION REQUESTS ADOPTION OR GUARDIANSHIP, IF YOU DO NOT MAKE SURE THAT THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE DEADLINE STATED ABOVE, YOU HAVE AGREED TO A TERMINATION OF YOUR PARENTAL RIGHTS.**

The Form Notice of Objection, which was provided to Father along with the show cause order, stated, in pertinent part:

Instructions to the person served with the show cause order: **IF YOU WISH TO OBJECT, YOU MUST MAKE SURE THAT THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE DEADLINE**

**STATED IN THE SHOW CAUSE ORDER.** You may use this form to do so. You need only sign this form, print or type your name, address, and telephone number underneath your signature, and mail or deliver it to the court at the address shown in paragraph 2 of the show cause order. **IF THE COURT HAS NOT RECEIVED YOUR NOTICE OF OBJECTION ON OR BEFORE THE DEADLINE STATED, YOU HAVE AGREED TO A TERMINATION OF YOUR PARENTAL RIGHTS.**

Any objection to the show cause order was required to be received by the Circuit Court for Queen Anne's County by Tuesday, May 31, 2011.[2] Father's objection, however, was not received by the court until Wednesday, June 1, 2011, one day after the thirty-day deadline.[3] Stepfather, through counsel, filed a Motion to Strike Late Notice of Objection on June 13, 2011, arguing that the objection should be stricken as untimely. The parties filed various responses to the Motion to Strike, and the court held a hearing regarding the motion on August 8, 2011. The Circuit Court for Queen Anne's County granted Stepfather's Motion to Strike Late Notice of Objection and further ordered that the adoption proceed in the normal course, as uncontested. In his order, the circuit judge stated:

> Title 9 of the Maryland Rules of Procedure applies. Specifically, 9–107(b), applies and it sets forth that any notice of objection to an adoption or guardianship shall be filed within 30 days after the show cause order is served. In this case, the show cause order, which complies with the rules and the forms, was served by personal service. It was served on

---

**2.** The thirtieth calendar day after Father was served with the show cause order fell on Sunday, May 29, 2011. The thirty-first calendar day after Father was served with the show cause order fell on Monday, May 30, 2011, which was Memorial Day. Therefore, pursuant to Maryland Rule 1–203, any objection was due to be received by Tuesday, May 31, 2011, the following business day.

**3.** Because service was made upon Father by personal service and not by mail, Maryland Rule 1–203(c) does not apply and an extra three days are not added to the prescribed period.

April 29th of 2011. Notice of objection was filed in this court on June 1st 2011. By my calculations and I think its also been stated here today, that is two days late.[4]

Quite simply, the Court is to determine whether 9–107 is mandatory. I have heard no reason that would create good cause to exceed the rule. There has been no indication of any disability or of any other reason, its just a late filing and because of that, I find that the motion to strike is appropriate and I'll strike the notice of objection.[5]

Thereafter, Father filed a motion to Alter and Amend Judgment on August 18, 2011, and filed an Emergency Motion to Stay Adoption Proceeding on August 24, 2011. The court denied both motions on September 12, 2011. This timely appeal followed.

## STANDARD OF REVIEW

In child custody and termination of parental rights cases, this court utilizes three interrelated standards of review. *In re Adoption of Victor A.*, 386 Md. 288, 297, 872 A.2d 662, 667 (2005) (citing *In re Yve S.*, 373 Md. 551, 586, 819 A.2d 1030, 1051 (2003)). The Court of Appeals described the three interrelated standards as follows:

We point out three distinct aspects of review in child custody disputes. When the appellate court scrutinizes factual findings, the clearly erroneous standard of [Rule 8–131(c)] applies. [Second,] if it appears that the [court] erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. Finally, when the appellate court

---

4. The circuit judge stated that the notice of objection was two days late, however the notice was actually one day late. Due to the 30th day falling on a Sunday and the 31st day falling on Memorial Day, Father's objection was due to be received by the court on the 32nd day, May 31.

5. The transcript of the August 8, 2011 hearing was originally omitted from the record for this appeal. Father filed a motion to supplement the record with the hearing transcript on March 30, 2012. We grant Father's motion to supplement the record.

views the ultimate conclusion of the [court] founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the [court's] decision should be disturbed only if there has been a clear abuse of discretion.

*In re Yve S., supra,* 373 Md. at 586, 819 A.2d at 1051. We review the trial court's conclusions as to matters of law *de novo. In re Adoption/Guardianship of Audrey B., Adriana H., and Eric H.,* 186 Md.App. 454, 463, 974 A.2d 965, 970 (2009) (quoting *Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175 (2006) ("[W]here an order [of the trial court] involves an interpretation and application of Maryland constitutional, statutory or case law, [the appellate court] must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review.")). There is no factual finding at issue involved in this appeal; the issue at stake is an order of the trial court involving the interpretation of Maryland statutory law. Accordingly, we review the trial court's conclusion regarding the effect of Father's untimely objection *de novo.*

## DISCUSSION

Summarizing the contentions of the parties, Father first argues that his failure to file a timely objection to the proposed independent adoption within the required time period does not constitute an irrevocable consent to the adoption. Stepfather responds that Father concedes that he did not timely file a notice of objection, and that under the reasoning of various cases construing the same thirty-day objection period within the context of CINA cases, Father's deemed consent is irrevocable.

Second, Father argues that even if his failure to file a timely objection is considered a deemed consent under Maryland law, the deemed consent scheme is unconstitutional because it violates his constitutional right to enjoy the society of his child. Stepfather responds that, under existing law, the Maryland statutory scheme is constitutional and violates no constitutional right of Father.

We address each of Father's contentions in turn.

## I.

Father's first argument is that his failure to file a timely objection to the proposed independent adoption within the required time period is not an irrevocable consent to the adoption. Father argues that the case law construing the thirty-day objection period is within the context of Child in Need of Assistance ("CINA") and guardianship proceedings, and is therefore irrelevant to an independent adoption where the child is not CINA.[6] Additionally, Father argues that the trial court should have established his paternity before proceeding with the adoption. We find neither argument persuasive, as discussed below.

### A. Statutory construction and applicability of guardianship-related case law

Father is correct that we have not previously addressed the issue of deemed consent in the context of independent adoptions. We, however, disagree with Father's argument that the existing case law is entirely inapplicable. We believe that prior cases construing the same thirty-day objection period in the context of guardianship proceedings are relevant to independent adoptions as well, inasmuch as the language is nearly identical.

We begin our analysis of the thirty-day objection period by examining the language of the statute and implementing rules. When presented with an issue of statutory construction, we keep in mind the following principles:

> Our predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself. If the language is clear and unambiguous, our search for legisla-

---

6. All references to "guardianship" refer exclusively to guardianship proceedings arising under Sections 5–313 through 5–328 of the Family Law Article. Such guardianships result in termination of parental rights, and one method by which a parent consents to such a guardianship is by failing to file a timely notice of objection after being served with a show cause order.

tive intent ends and we apply the language as written in a commonsense manner. We do not add words or ignore those that are there. If there is any ambiguity, we may then seek to fathom the legislative intent by looking at legislative history and applying the most relevant of the various canons that courts have created.

*Audrey B., supra*, 186 Md.App. at 462–63, 974 A.2d at 970 (quoting *Downes v. Downes*, 388 Md. 561, 571–72, 880 A.2d 343 (2005)).

The procedures governing independent adoptions are found in §§ 5–3B–01 to 5–3B–32 of the Family Law Article and their implementing rules. Section 5–3B–15 provides that, after a petition to adopt is filed, the court must issue a show cause order "on each of the prospective adoptee's living parents who has not consented to the adoption." Md.Code (1984, 2006 Repl.Vol.), § 5–3B–15 of the Family Law Article ("FL").[7] The court may only enter an order for adoption if each of the prospective adoptee's living parents consents, either in writing or "by failure to timely file notice of objection after being served with a show cause order . . . ." FL § 5–3B–20.

The implementing rules regarding adoptions and guardianships are found in Maryland Rules 9–101 through 9–113. Md. Rule 9–105 sets forth the requirements for show cause orders, including when show cause orders are required to be filed and the content of such orders. Md. Rule 9–105(a) states that a show cause order is required in public agency guardianships, public agency adoptions, private agency guardianships, and independent adoptions. There are various requirements concerning the contents of a show cause order, and regardless of the type of proceeding, all show cause orders must include language substantially similar to the following:

"IF YOU DO NOT MAKE SURE THAT THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE STATED DEADLINE, YOU HAVE

---

**7.** Unless otherwise indicated, all statutory references are made to relevant sections and subsections of the Family Law Article of the Annotated Code of Maryland.

AGREED TO A TERMINATION OF YOUR PARENTAL RIGHTS."

Md. Rule 9–105(e). Father does not dispute that he was served with a show cause order and that the show cause order he received is consistent with the requirements of Md. Rule 9–105.

Md. Rule 9–107 sets forth the time period in which a parent may file a notice of objection to an adoption or guardianship proceeding, and states: "any notice of objection to an adoption or guardianship shall be filed within 30 days after the show cause order is served." There is no dispute that Father was properly served, or that his notice of objection was not timely filed. The show cause order was personally served on Father on April 29, 2011. Father filed his notice of objection on June 1, 2011, one day beyond the deadline proscribed in Md. Rule 9–107(b)(1). Father does not argue that there was anything unclear about the language of the show cause order, nor does he give any reason why he failed to file a timely objection. The dispute, rather, revolves around the effect, if any, of Father's untimely objection.

■ It is well settled that, in the context of guardianship cases, failure to file a timely objection serves as an irrevocable deemed consent to termination of parental rights. *See In re Adoption/Guardianship of Chaden M.*, 189 Md.App. 411, 984 A.2d 420 (2009) ("[A] failure to timely file a notice of objection amounts to a consent to guardianship ... Moreover, a deemed consent is irrevocable.") (citing *In re Adoption/Guardianship of Audrey B.*, *supra*, 186 Md.App. at 465–76, 974 A.2d 965); *In re Adoption/Guardianship No. 93321055*, 344 Md. 458, 486, 687 A.2d 681, 694 (1997) (concluding there was no right to revoke a deemed consent under prior statute).

The Court of Appeals first addressed this issue in *In re Adoption/Guardianship No. 93321055*, *supra*, 344 Md. 458, 687 A.2d 681. In that case, the Court considered five cases in which the State sought guardianship of a child. *Id.* The Court considered whether the circuit court had authority to consider an objection filed after the time specified in the show cause

order and, if a parent failed to file a timely objection and was therefore deemed to have consented, whether the parent may thereafter revoke that deemed consent. *Id.* at 464, 687 A.2d at 684.[8] The Court concluded that the circuit court did not have the authority to entertain untimely objections, and that a deemed consent was irrevocable. *Id.* at 496, 687 A.2d at 699. The Court noted that a termination of parental rights may be entered upon "the voluntary, affirmative consent of the natural parents." *Id.* at 477–78, 687 A.2d at 690–91. Alternatively, "in cases in which the parent does not affirmatively consent to the guardianship ... the court, upon the filing of a [guardianship] petition, [must] enter and serve upon the parent a show cause order informing the parent of the petition ... The order explains in plain language that the parents have the right to object to the guardianship but that, if they wish to object, they must file their objection with the court by the date set forth in the order." *Id.* Thus, the Court concluded that a failure to object within the required time period served as a statutory deemed consent. *Id.* at 479, 687 A.2d at 691.

The Court then turned to the issue of revocability of deemed consents, and concluded that deemed consents were irrevocable. In *93321055,* as in the instant case, the parents had been served with show cause orders but failed to file timely objections. *Id.* at 466–74, 687 A.2d at 685–89. The circuit court had accepted the late-filed objections. *Id.* The Court of Appeals found that, although the statute provided a

---

**8.** It is important to note that in *In re Adoption/Guardianship No. 93321055,* the Court of Appeals construed the thirty-day objection period as required under an earlier version of the statute. The statute then in effect, FL § 5–322(d), provided in relevant part: "If a person is notified under this section and fails to file notice of objection within the time stated in the show cause order ... (1) the court shall consider the person who is notified ... to have consented to the ... guardianship; and (2) the petition shall be treated in the same manner as a petition to which consent has been given." *In re Adoption/Guardianship No. 93321055, supra,* 344 Md. at 479, 687 A.2d at 691. This Court has since found that *In re Adoption/Guardianship No. 93321055* applies "with equal force to the 2005 revisions to Maryland's guardianship and adoption laws." *In re Audrey B., supra,* 186 Md.App. at 476, 974 A.2d at 978.

period for parents to revoke their explicitly granted consent, there was no such right to revoke a deemed consent because a deemed consent is "a consent … arising by operation of law, not by volition, and it is not within the power of the parent to revoke it." *Id.* at 486, 687 A.2d at 694. The Court noted that "the revocation period allowed under § 5–317(e) … is clear, fixed, and easily ascertained. The certainty of the period is essential for DSS and the court to know what, if any, right to notice and participation the parent retains. That certainty would not exist if a right to revoke is attached to the 'deemed' consent under § 5–322." *Id.* at 485, 687 A.2d at 694. The Court of Appeals, therefore, concluded that circuit courts do not have authority to entertain late-filed objections and that deemed consents arising as a result of failure to object are irrevocable. *Id.* at 496, 687 A.2d at 699.

The underlying statute governing the deemed consent process for guardianships has since been amended, but the basis for finding that failure to file a timely objection constitutes an irrevocable deemed consent remains. In *In re Audrey B.*, we found "nothing in the amended statute that causes us to believe that the rationale applied by the Court in *In re Adoption/Guardianship No. 93321055, supra* does not continue to apply with equal force to the 2005 revisions to Maryland's guardianship and adoption laws." 186 Md.App. at 476, 974 A.2d at 978. We held, "there remains no right to revoke a statutorily deemed consent entered by operation of law." *Id.*

 As a matter of statutory construction, we see no reason why the rationale of *In re Adoption/Guardianship No. 93321055, supra*, 344 Md. 458, 687 A.2d 681, and *In re Audrey B., supra*, 186 Md.App. 454, 974 A.2d 965, should not apply to independent adoption cases as well. The statutory language regarding failure to object as deemed consent in guardianship proceedings is found in FL § 5–320, which provides, in pertinent part:

(a) *Consent and acquiescence or best interests.*—A juvenile court may grant guardianship of a child only if:

\*　　　\*　　　\*

(iii) 1. Each of the child's living parents consents:

A. in writing;

B. knowingly and voluntarily, on the record before the juvenile court; or

C. *by failure to file a timely notice of objection* after being served with a show cause order in accordance with this subtitle....

FL § 5–320 (emphasis added). Therefore, failure to file a timely notice of objection serves as a statutory deemed consent in guardianship proceedings. *See In re Audrey B.,* *supra,* 186 Md.App. at 476, 974 A.2d at 978. Moreover, a statutory deemed consent due to failure to file a timely notice of objection is irrevocable. *Id.* at 476, 974 A.2d at 978.

▆▆ Father is correct that we have not yet construed the statute governing failure to object in independent adoption proceedings. The language of the statute, however, is substantially similar to that governing guardianships, and we see no reason why the rationale of *Audrey B.* should not apply. Section 5–3B–20 of the Family Law Article, governing authority to grant independent adoptions, provides, in pertinent part:

A court may enter an order for adoption only if:

(1)(i) 1. Each of the prospective adoptee's living parents consents:

A. in writing; or

B. *by failure to timely file notice of objection* after being served with a show cause order in accordance with this subtitle....

FL § 5–3B–20 (emphasis added). The relevant language here is identical to the language of § 5–320, and we find no basis to conclude that the legislature intended the language of § 5–3B–20 be given different effect than the language of § 5–320.

Moreover, the committee note to § 5–3B–19, now renumbered as § 5–3B–20,[9] indicates that the legislature, in its 2005

---

9. Section 5–3B–20 of the Family Law Article, "Authority to grant adoption," was previously found in section 5–3B–19. It was renumbered at § 5–3B–20 in 2006. 2006 Md. Laws ch. 365, § 1, p. 1896.

revisions to the adoption and guardianship statutes, intended that a failure to file a timely objection serve as a deemed consent to an independent adoption. The committee note provides:

> This section is derived from former FL SECTION 5–317(c)(2), as it related to adoption under this subtitle, and *revised to clarify that failure to respond to a show cause order is deemed to be consent.*

Committee Note, 2005 Md. Laws, ch 464 § 3, p. 2718 (emphasis added). The committee note applies exclusively to § 5–3B–20, entitled "Authority to grant adoption." This section pertains solely to independent adoption, and the committee note explicitly indicates that the legislature intended that failure to respond to a show cause order serve as a deemed consent in the context of independent adoptions.

Additionally, the Maryland Rules governing the thirty-day objection period also provide support for the conclusion that failure to respond to a show cause order constitutes a deemed consent in the context of independent adoptions. Md. Rule 9–107 sets out the objection requirements for both adoption and guardianship proceedings, and does not differentiate between the two. Rule 9–107 provides in pertinent part:

> (a) In general. Any person having a right to participate in a proceeding for *adoption or guardianship* may file a notice of objection to the *adoption or guardianship.* The notice may include a statement of the reasons for the objection and a request for the appointment of an attorney.
>
> (b) Time for filing objection.
>
> (1) In general. Except as provided by subsections (b)(2) and (b)(3) of this Rule, *any notice of objection to an adoption or guardianship shall be filed within 30 days after the show cause order is served.*[10]

Md. Rule 9–107 (emphasis added). The rule does not differentiate between guardianships and adoptions, nor does it set

---

**10.** Rule 107(b)(2) and (b)(3) refer to service of process out of state and out of the United States, which are irrelevant to the instant case.

forth different time limits for guardianships and adoptions. We see no basis in the rules for interpreting the requirements for filing of objection in independent adoptions differently than for guardianships. Thus, we conclude that failure to timely object to an independent adoption has the same effect as failure to timely object to a guardianship. As a result, the failure to timely object to an independent adoption serves as a statutory deemed consent.

Further, we find no basis to conclude that the legislature intended that a deemed consent be revocable while a deemed consent to a guardianship is irrevocable. § 5–3B–21(b) governs revocation of consent for independent adoptions, and provides in pertinent part:

(b) *Revocation period.*—(1)(i) Subject to subparagraph (ii) of this paragraph, a parent may revoke consent at any time within 30 days after the parent signs the consent.

(ii) A parent may not revoke consent for adoption of a prospective adoptee if:

1. In the preceding year, the parent has revoked consent for or filed a notice of objection to adoption of the prospective adoptee; and

2. The child is at least 30 days old and consent is given before a judge on the record.

FL § 5–3B–21(b). This language is nearly identical to the language regarding revocation of consent in the context of guardianships, which we have held does not provide a right to revoke a statutorily deemed consent. *In re Audrey B., supra,* 186 Md.App. at 476, 974 A.2d at 978. The statute governing revocation of consent in guardianship proceedings is found in FL § 5–321, and provides in pertinent part:

[A] person may revoke consent to the guardianship at any time within the later of:

(i) 30 days after the person signs the consent; or

(ii) 30 days after the consent is filed as required under this section.

FL § 5–321(c). Both for independent adoptions and for guardianships, the statute allows for revocation of a signed

consent within thirty days after the consent is signed. FL §§ 5–321(c); 5–3B–21(b).

It is well established that a deemed consent arising as the result of a failure to object is not revocable in guardianship proceedings. *In re Adoption/Guardianship No. 93321055, supra,* 344 Md. at 486, 687 A.2d at 694 ("[T]here is no right to revoke a statutory consent arising under § 5–322(d). That is a consent, as we have said, arising by operation of law, not by volition, and it is not within the power of the parent to revoke it.") (construing the former statute); *In re Adoption/Guardianship of Audrey B.* 186 Md.App. at 476, 974 A.2d at 978 ("We hold that ... there remains no right to revoke a statutorily deemed consent entered by operation of law."). Given that the language regarding revocation of consent is nearly identical for guardianships and independent adoptions, we see no reason to adopt an alternate conclusion here. We conclude that failure to object to an independent adoption constitutes a deemed consent. Accordingly, there is no right to revoke a statutorily deemed consent entered by operation of law.

## B. Establishment of Paternity

■■■■ Father also argues that, before initiating an independent adoption proceeding, the court should have first established Father's paternity conclusively. Father points to no case law to support his contention that a putative father can only consent or object to an adoption or guardianship if his paternity has been conclusively established. Existing law and common sense both suggest the opposite conclusion.

A court may enter an order for adoption only if each of the prospective adoptee's living parents consents. FL § 5–3B–20. " 'Parent' means an individual who, at any time before a court enters an order for adoption under this subtitle: (i) meets a criterion in § 5–3B–05(a); or (ii) is the mother." Section 5–3B–05(a) provides that unless a court excludes a man as the father of a child, a man is the father if:

(1) the man was married to the child's mother at the time of the child's conception;

(2) the man was married to the child's mother at the time of the child's birth;

(3) the man is named as the father on the child's birth certificate and has not signed a denial of paternity;

(4) the child's mother has named the man as the child's father and the man has not signed a denial of paternity;

(5) the man has been adjudicated to be the child's father;

(6) the man has acknowledged himself, orally or in writing, to be the child's biological father;

(7) on the basis of genetic testing, the man is indicated to be the child's biological father.

FL § 5–3B–05. The statute explicitly does not require a potential father be adjudicated the father before being permitted to consent or object to an adoption. Instead, the statute provides various circumstances in which a purported father's consent is required.[11] Thus, the statute does not contemplate that a father's paternity be conclusively determined before he has standing to consent or object.

Moreover, show cause orders are often issued to putative fathers whose paternity has not been conclusively established. *See In re Adoption/Guardianship No. 93321055, supra,* 344 Md. at 468, 687 A.2d at 685–86; *In re Adoption/Guardianship of Joshua M.,* 166 Md.App. 341, 344, 888 A.2d 1201, 1202 (2005). In *In re Adoption/Guardianship No. 93321055,* the court noted that show cause orders were issued to two men

---

**11.** In this case, it is unclear whether Father meets the definition of father set forth in § 5–3B–05, and therefore it is not obvious whether Father's consent is even required for the court to enter an order for adoption. Mother and Father were never married; Father is not named as the father on Sean's birth certificate; Father was not adjudicated to be Sean's father; Father had not, at the initiation of the adoption proceeding, acknowledged himself to be Sean's biological father; and Father has not been indicated to be Sean's father on the basis of biological testing. Shortly after Sean's birth, Mother named Father as Sean's father in a custody proceeding in the Circuit Court for Anne Arundel County, case number C–09–142875. Father denied paternity in his Answer, and the case was dismissed by agreement of the parties. Inasmuch as Stepfather has not argued that Father's consent is not required because he does not meet the statutory definition of father under this statute, we decline to address this issue.

who were suspected of being the child's father. 344 Md. at 468, 687 A.2d at 686. One of the putative fathers filed a timely objection. *Id.* At no point did the court seek to establish paternity before filing show cause orders and allowing the putative fathers to object.

In *In re Adoption/Guardianship of Joshua M.,* two potential fathers were issued show cause orders and informed of the opportunity to object to a guardianship proceeding. 166 Md. App. at 344 n. 2, 888 A.2d at 1202 n. 2. One of the putative fathers, Harry M., denied paternity, and the other putative father, Peter C., never responded to the show cause order. *Id.* The court found that Peter C. was "deemed to have consented" to the petition to terminate his parental rights. *Id.* Peter C. was deemed to have consented even though his paternity had never been conclusively established. Here, Father similarly is deemed to have consented even though his paternity has not been conclusively established.

Adopting Father's view on this point, which would require paternity to be established before any parent can waive an objection to a guardianship or adoption proceeding, would also be nonsensical from an efficiency standpoint. Had Father objected timely, he would have had the opportunity to establish paternity. Given that putative fathers often consent to a guardianship or adoption, there is no reason to require them to establish paternity simply to relinquish their parental rights. There is simply no rational reason to require paternity determinations prior to the issuance of a show cause order and the opportunity to object. We, therefore, conclude that Father was properly served with a show cause order, and had he timely objected, would have had the opportunity to establish paternity. Accordingly, establishing his paternity at an earlier point in the proceedings was not necessary in order for Father to have standing to file a timely objection.

## II.

 Second, Father argues that Maryland's deemed consent scheme violates his constitutional right to the society

of his child, and that his "constitutional right to enjoy the society of his child should 'trump' any statutory procedural default scheme." [12] It is well established that parents have a fundamental liberty interest in raising their children under the Due Process Clause of the 14th Amendment. *In re Adoption/Guardianship No. 93321055, supra,* 344 Md. at 491, 687 A.2d at 697 (citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)). The Court of Appeals articulated three principles regarding parents' rights in this area:

> *Lassiter, Santosky,* and their progeny recognize three basic principles: (1) parents have a fundamental liberty interest in the care, custody, and management of their children, (2) when the State moves to abrogate that interest, it must provide the parents with fundamentally fair procedures, and (3) the process due to parents in that circumstance turns on a balancing of the three factors specified in *Matthews [Mathews] v. Eldridge,* 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976), *i.e.,* the private interests affected by the proceeding, the risk of error created by the State's chosen procedure, and the countervailing governmental interest supporting the use of the challenged procedure.

*In re 93321055, supra,* 344 Md. at 491, 687 A.2d at 697.

In *In re 93321055,* the Court of Appeals held that the deemed consent scheme, in the context of guardianship proceedings, "[did] not facially offend any due process right of the parent." *Id.* at 494, 687 A.2d at 698.[13] We believe that the

---

**12.** Father does not argue specifically the precise provision of the Constitution he believes is violated by the deemed consent scheme, but his brief includes language regarding a "fundamental right" and relies upon case law construing the Due Process Clause of the 14th Amendment. Accordingly, we limit our analysis to any constitutional issues arising under the Due Process Clause of the 14th Amendment.

**13.** The Court of Appeals also determined that the deemed consent scheme did not violate the parents' equal protection rights in guardian-

deemed consent scheme, in the context of independent adoptions, is similarly consistent with due process. We further hold that the process provided to natural parents is fundamentally fair and is consistent with the process due under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Assuming *arguendo* there is a constitutional right at issue here,[14] we are confident that the procedures provided to natural parents within the context of independent adoption proceedings are fundamentally fair, and that the process afforded to natural parents is consistent with the *Mathews* factors.

We hold that the procedures provided to natural parents pursuant to Sections 5–3B–01 through 5–3B–32 of the Family Law Article and Maryland Rules 9–105 and 9–107 are fundamentally fair. *See* FL §§ 5–3B–01 through 5–3B–32; Md. Rules 9–105, 9–107. Parents are required to be notified when an adoption petition is filed, a show cause order must be served on each of the adoptee's living parents who has not consented to the adoption, and the court may enter an order for adoption only if each of the prospective adoptee's living parents consents, either in writing or by failure to file timely notice of objection. FL §§ 5–3B–14, –15, –20. The show cause order must explicitly notify the parent of his or her

---

ship proceedings. *In re 93321055, supra*, 344 Md. at 495, 687 A.2d at 699. Here, although the constitutional right Father is asserting is ambiguous, *see supra* note 8, we conclude that he does not raise any equal protection issues.

**14.** It is not clear whether Father actually possesses a fundamental right to the society of Sean, given that Father and Mother were not married at the time of Sean's birth and Father has had no involvement with Sean up to this point. *See Lehr v. Robertson, supra*, 463 U.S. at 261, 103 S.Ct. 2985 ("When an unwed father demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child, his interest in personal contact with his child acquires substantial protection under the Due Process Clause ... But the mere existence of a biological link does not merit equivalent constitutional protection.") (internal quotations and citations omitted). We decline to reach the issue of whether or not Father, in the instant case, held a constitutionally protected liberty interest in the society of his child, because we find, even if he had such an interest, the interest was adequately protected by the statutory scheme.

right to object to the adoption, and the show cause order must include language substantially similar to the following:

"IF YOU DO NOT MAKE SURE THAT THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE STATED DEADLINE, YOU HAVE AGREED TO A TERMINATION OF YOUR PARENTAL RIGHTS."

Md. Rule 9–105(e). Where, as here, a father is notified that an adoption petition has been filed, has been afforded the opportunity to object, and had been made aware of the consequences if he does not timely object, we believe that he has been provided with fundamentally fair procedures.

 We also believe that the process afforded to Father is consistent with the *Mathews* factors. Under *Mathews v. Eldridge,* the process due to parents turns on a balancing of the following three factors: (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting the use of the challenged procedure. *In re 93321055, supra,* 344 Md. at 491, 687 A.2d at 697 (citing *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Balancing these three factors, the deemed consent scheme does not offend Father's due process rights. We discuss the first and third *Mathews* factors, the opposing private and governmental interests, before turning to the second factor, the risk of error.

The first factor, the private interest affected by this proceeding, is Father's interest in parenting Sean, based upon the parent's due process right to raise his or her children. The Court of Appeals has noted that "there are few, if any, rights more basic than that one." *Id.* at 491–92, 687 A.2d at 697. The third factor, the countervailing governmental interest, is to provide adoptive parents and children permanency and predictability within a fair process. The legislature specifically stated that one purpose of the adoption subtitle was to "timely provide permanent and safe homes for children consistent with their best interests." FL § 5–3B–03(b)(1).

Father argues that the governmental interest in a private adoption case is not as strong as the governmental interest in a guardianship proceeding. It is true that in *In re 93321055*, the Court of Appeals stressed that "the governmental interest in securing permanent homes for children placed into its custody because of an inability or unwillingness of their parents to care for them properly is ... strong and vital." 344 Md. at 492, 687 A.2d at 697. We believe, however, that the interest set forth by the legislature here—the interest in providing "timely ... permanent and safe homes for children consistent with their best interests"—is a compelling interest as well. FL § 5–3B–03(b)(1).

Finally, we return to the second *Mathews* factor: the risk of error created by the adoption of a strict, thirty-day objection deadline. We believe that the risk of error presented by the deemed consent scheme is quite limited. In discussing the risk of error created by the deemed consent scheme in the context of guardianship proceedings, the Court of Appeals emphasized the following:

> We cannot say that there is *no* risk of error in an absolute deadline, but zero tolerance is not required and is probably not achievable in any procedure. The statutory deemed consent does not exist in a vacuum. It arises only after service on the parent of a show cause order that explains, in plain, simple language, the right to object, how, where, and when to file a notice of objection, and the consequence of not filing one within the time allowed. A form notice of objection is attached to the order, and all the parent need do is sign it, print on it his or her name, address, and telephone number, and mail or deliver it to the address shown in the order.

*In re 93321055, supra*, 344 Md. at 493, 687 A.2d at 698. There is no indication that any extreme circumstance interfered with Father's ability to comply with the thirty-day deadline, and, as in *In re 93321055*, Father has offered no excuse beyond mere neglect for failing to file a timely objection. We, therefore, find no equitable reasons in the record that justify Father's

late filing of objection.[15] Father has not argued that he was confused by the procedure required for objection, and as an attorney, Father should have understood the importance of complying with court-ordered deadlines. We conclude, therefore, that Father's due process rights were not offended by the statutory deemed consent scheme.

Balancing the factors outlined in *Mathews*, therefore, we conclude that the statutory scheme regarding the failure to file a timely objection as an irrevocable deemed consent to the independent adoption petition does not offend any due process right of the parent.

**JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY AFFIRMED. APPELLANT TO PAY THE COSTS.**

---

**15.** In *In re 93321055*, the Court of Appeals noted that, in extreme circumstances, a due process problem may be presented by the deemed consent scheme. 344 Md. at 492–93, 687 A.2d at 698. The Court of Appeals stated, "[T]he Public Defender conjures up the prospect of a mother who lapses into a coma upon receipt of the show cause order and is, for that reason, rendered unable to file a timely objection. Something so extreme as that might indeed present a due process problem in the particular application of the statute, but the attack here is a frontal one, and in that context, the risk of error factor is not be judged by the remote, extreme case that, to the best of our knowledge, has never yet happened and is not ever likely to happen. None of the parents in [the case] in which this issue was raised, offered any excuse beyond mere neglect for failing to file a timely objection." *Id.* As in *In re 93321055*, Father has presented no extreme circumstance and no excuse beyond mere neglect for failing to file his timely objection.