63 A.3d 28

**In re Adoption of SEAN M.**

**No. 54, Sept. Term, 2012.**

Court of Appeals of Maryland.

March 22, 2013.

Philip J. Sweitzer, (Philip J. Sweitzer, LLC, Annapolis, MD), on brief, for Petitioner.

Thomas F. Ellis, III, (Thomas F. Ellis, III, LLC, Annapolis, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

We are asked in this matter whether the failure of a putative father to file timely a notice of objection to a proposed independent adoption operates as an irrevocable deemed consent to the termination of his assumed parental rights. This case involves the adoption of a minor child, Sean M. ("Sean"), by his stepfather, Respondent Jeffrey Craig K. Petitioner, William H., the putative father of Sean, filed an objection to the stepparent adoption one day after the expiration of the thirty-day deadline provided by the show cause order issued by the Circuit Court for Queen Anne's County, pursuant to Maryland Rule 9–107(b). Petitioner asks us to reverse the trial court's and the Court of Special Appeals's judgments that his failure to file the objection within the statutory time period constituted an irrevocable consent to the adoption. For the reasons stated below, we affirm the judgments of those courts.

## FACTUAL AND PROCEDURAL HISTORY

Moira M. ("Mother") and William H. engaged in a romantic relationship from April to November of 2008. They were not married. Sean was born to Moira M. in Annapolis, Maryland, on 16 June 2009. Moira M. became engaged to Jeffrey Craig K. ("Stepfather") in November of 2009. Since that time, she and Sean lived with Stepfather in Queen Anne's County. Mother and Stepfather married on 16 October 2011.

On 14 July 2009, Mother filed a Complaint against William H. in the Circuit Court for Anne Arundel County, asserting that William H. is the natural father of Sean [1] and seeking sole

---

1. Sean's birth certificate does not identify a father.

legal and physical custody. In his Answer, filed on 14 September 2009,[2] William H. denied that he was the natural father of Sean and stated that he had no objection to Mother having custody.[3] On 14 January 2010, the suit was dismissed by agreement of the parties.

On 30 March 2011, Stepfather filed a Petition for Stepparent Adoption of a Minor and Change of Name ("Petition") in the Circuit Court for Queen Anne's County, stating his intention to continue to reside with Sean's mother, and "[t]hat the natural father of the minor child has not been identified; no persons alleging to be the natural father of the minor child have come forward; and no natural father is listed on the minor child's birth certificate." The Petition stated also that, even if William H. was the natural father of Sean, he has "abandoned his parental rights" as to Sean because William H.: (1) denied that he was the natural father of the minor child during the earlier custody proceeding in the Circuit Court for Anne Arundel County; (2) has not "exercised any parental rights since the minor child's birth;" and, (3) has not attempted to support and maintain Sean since his birth.

On 15 April 2011, the Circuit Court issued a show cause order and form notice of objection to William H., who was served properly by personal service on 29 April 2011. The show cause order stated, in pertinent part (emphasis in original):

RELATIONSHIP TO POTENTIAL ADOPTEE: **[Puported] FATHER**

You are hereby notified that:

---

**2.** William H.'s answer was received initially by the court on or about 28 August 2009, but was returned due to a failure to pay an attorney appearance fee.

**3.** William H. explains in his brief that he ought to have answered Mother's complaint that he was without knowledge or sufficient information to either admit or deny properly Mother's allegation that he was the natural father of Sean. He notes correctly, however, that such a response would have operated legally as a denial of paternity, pursuant to Md. Rule 2–323(c).

1. A Petition has been filed for the adoption of Sean ...,
who was born on June 19, 2009 in Queen Anne's County,
Maryland.[4]

2. If you wish to object to the adoption(s), you must file a
notice of objection with the Clerk of the Court at Circuit
Court for Queen Anne's County ... **within thirty (30) days**
after this Order is served on you. For your convenience, a
form notice of objection is attached to this Order.

\* \* \* \* \* \*

**WHETHER THE PETITION REQUESTS ADOPTION
OR GUARDIANSHIP, IF YOU DO NOT MAKE SURE
THAT THE COURT RECEIVES YOUR NOTICE OF
OBJECTION ON OR BEFORE THE DEADLINE STAT-
ED ABOVE, YOU HAVE AGREED TO A TERMI-
NATION OF YOUR PARENTAL RIGHTS.**

The form notice of objection, provided to William H. along
with the show cause order, stated, in relevant part (emphasis
in original and emphasis added):

Instructions to the person served with the show cause
order: **IF YOU WISH TO OBJECT, YOU MUST MAKE
SURE THAT THE COURT RECEIVES YOUR NOTICE
OF OBJECTION ON OR BEFORE THE DEADLINE
STATED IN THE SHOW CAUSE ORDER.** You may use
this form to do so. You need only sign this form, print or
type your name, address, and telephone number underneath
your signature, and mail or deliver it to the court at the
address shown in paragraph 2 of the show cause order. *IF
THE COURT HAS NOT RECEIVED YOUR NOTICE OF
OBJECTION ON OR BEFORE THE DEADLINE STAT-
ED, YOU HAVE AGREED TO A TERMINATION OF
YOUR PARENTAL RIGHTS.*

The required deadline for William H. to file with the Circuit
Court for Queen Anne's County any objection to Stepfather's

---

**4.** The show cause order stated incorrectly Sean's birth date, which is 16
June 2009, and Sean's birth place, which is Annapolis, Maryland.

petition for adoption of Sean was 31 May 2011.[5]  The Circuit Court received William H.'s written objection on Wednesday, 1 June 2011, one day after the expiration of the thirty-day deadline.  On 13 June 2011, Stepfather filed a Motion to Strike Late Notice of Objection, requesting that the adoption proceed as an uncontested matter.  A hearing was held before Judge J. Frederick Price on 8 August 2011.  Judge Price granted Stepfather's motion, noting that William H. did not allege any disability or any other circumstance to excuse the requirement, pursuant to Maryland Rule 9–107(b)(1),[6] of filing a notice of objection to an adoption within thirty days after the show cause order is served.

William H. filed a Motion to Alter and Amend Judgment on 18 August 2011,[7] and, a week later, an Emergency Motion to Stay Adoption Proceeding.  The court denied both motions. William H. appealed the denial of the orders to the Court of

---

**5.**  This case reached the Court of Special Appeals and was decided by a panel of that court.  The panel explained correctly, in its reported opinion, that "the thirtieth calendar day after [William H.] was served with the show cause order fell on Sunday, May 29, 2011.  The thirty-first calendar day after [William H.] was served with the show cause order fell on Monday, May 30, 2011, which was Memorial Day. Therefore, pursuant to Maryland Rule 1–203, any objection was due to be received by Tuesday, May 31, 2011, the following business day." *In re: Adoption of Sean M.*, 204 Md.App. 724, 731, n. 2, 42 A.3d 722, 726, n. 2 (2012).  The trial court judge found that the notice of objection was filed two days late; however, as the panel explained, William H.'s notice was filed actually one day late.

**6.**  Md. Rule 9–107(b)(1) provides, in pertinent part:
 (b) Time for Filing Objection.
 (1) In General.  Except as provided by subsections (b)(2) and (b)(3) of this Rule, any notice of objection to an adoption or guardianship shall be filed within 30 days after the show cause order is served.

**7.**  In his Motion to Alter and Amend Judgment, and appended Memorandum, William H. asserted that his then-attorney was at fault for failing to file the notice of objection within the 30–day time period required under Md. Rule 9–107(b)(1).  William H. did not press, however, this apparent "ineffective assistance of counsel" challenge in the hearing before Judge Price, nor did Petitioner assert this in his Petition for Writ of Certiorari.  William H., an attorney admitted to practice in Maryland at all relevant times in this matter, offers us no explanation or extenuating circumstances for why the objection was filed late.

Special Appeals. On 27 April 2012, a panel of the court affirmed the Circuit Court's grant of Stepfather's Motion to Strike William H.'s untimely objection. The court held that the time period established in Md. Rule 9–107(b)(1) applied equally to guardianships as well as adoptions, and that it rendered the late filing of a notice of objection to an adoption as an irrevocable consent to termination of the pertinent parent's rights, *In re: Adoption of Sean M.*, 204 Md.App. 724, 742, 42 A.3d 722, 732 (2012). The intermediate appellate court held also that this statutory scheme did not offend any due process right of William H. *Id.* at 749, 42 A.3d at 737. William H. filed a petition for Writ of Certiorari with us on 18 June 2012. We granted the petition, *In re: Adoption of Sean M.*, 427 Md. 606, 50 A.3d 605 (2012), to consider two questions:

1. Whether a natural parent's failure to file a timely objection to a proposed independent adoption, as directed in a show cause order, constitutes an irrevocable consent to the adoption?

2. Whether the statutory scheme resulting in an irrevocable deemed consent to an independent adoption offends the due process rights of the parent?

## DISCUSSION

Where a trial court interprets and applies Maryland case or statutory/regulatory law, we determine on appellate review, under a non-deferential standard of review, whether the trial court's conclusions are "legally correct." *Garfink v. Cloisters at Charles*, 392 Md. 374, 383, 897 A.2d 206, 211 (2006) (quoting *Gray v. State*, 388 Md. 366, 374–75, 879 A.2d 1064, 1068 (2005) (internal citations omitted)). Thus, we apply the non-deferential standard in reviewing the trial court's conclusion here that a Maryland statute and rule of procedure renders William H.'s late filing of his notice as an irrevocable consent to the adoption of Sean.

### A. Failure to File a Timely Objection Constitutes an Irrevocable Consent

William H. contends that his failure to file timely a notice of objection to the proposed independent adoption does not con-

stitute an irrevocable consent to the adoption. Stepfather argues, and the panel of the Court of Special Appeals agreed, that, under several Child in Need of Assistance ("CINA") cases interpreting the effect of a similar thirty-day objection period, a parent's late-filed objection is a deemed irrevocable consent in independent adoptions as well.

This Court has not addressed previously the issue of statutorily-deemed consent in the context of independent adoptions. The principles of statutory interpretation guide our analysis of the effect of the thirty-day notice of objection period upon independent adoptions. In interpreting statutory and rule-based language, our "'primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules.'" *Miller v. Mathias,* 428 Md. 419, 450, 52 A.3d 53, 72 (2012) (quoting *Ray v. State,* 410 Md. 384, 404, 978 A.2d 736, 747 (2009) (internal citations omitted)). The rules of interpretation applicable to statutes apply equally to interpreting the Maryland Rules. *Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 78, 775 A.2d 1218, 1224 (2001). Our first step in this analysis is to look to the "normal, plain meaning of the language of the statute, reading the statute [or rule] as a whole to ensure that 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Id.* at 450–51, 52 A.3d at 72 (quoting *Ray,* 410 Md. at 404, 978 A.2d at 747–48 (internal citations omitted)). "If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends." *Ray,* 410 Md. at 405, 978 A.2d at 748 (citations omitted).

Md.Code (1984, 2006 Repl. Vol) Fam. Law ("FL") § § 5–3B–01 to 5–3B–32, and their implementing rules, Md. Rules 9–101 through 9–113, govern independent adoptions. The independent adoption process begins with the filing of a petition to adopt, which requires the trial court to issue and serve a show cause order "on each of the prospective adoptee's living parents who has not consented to the adoption." FL § 5–3B–15.

An order for adoption may be entered only if each of the prospective adoptee's parents consents either in writing or "by failure to timely file notice of objection after being served with a show cause order...." FL § 5–3B–20.

Md. Rule 9–105 establishes for all adoptions the required content of the show cause order and when a show cause order must be issued. Pursuant to Md. Rule 9–105(a), a show cause order is required in independent adoptions, public agency adoptions, public agency guardianships, and private agency guardianships.[8] According to Md. Rule 9–105(e), all show cause orders must include language substantially similar to the following:

> IF YOU DO NOT MAKE SURE THAT THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE STATED DEADLINE, YOU HAVE AGREED TO A TERMINATION OF YOUR PARENTAL RIGHTS.

The show cause order served personally on William H. on 29 April 2011 contained language consistent with the requirements of Md. Rule 9–105.

According to Md. Rule 9–107(b)(1), a parent must file "any notice of objection to an adoption or guardianship ... within 30 days after the show cause order is served." William H. concedes that he filed his notice of objection on 1 June 2011, thirty-one days after he was served with the show cause order on April 29. He does not dispute that the filing was untimely under Md. Rule 9–107(b)(1). Thus, the sole issue in this appeal is what is the legal effect, if any, of William H.'s late filing.

Analyzing how Md. Rule 9–107(b)(1) and the corresponding guardianship statutory provisions operate in guardianship cases provides helpful guidance in determining that Rule's

---

8. Guardianships, like adoptions, terminate parental rights. Such proceedings are governed by FL §§ 5–313 through 5–328. Similar to the statutory procedure for independent adoptions, a parent may consent to a guardianship by failing to file a timely notice of objection after being served with a show cause order. FL § 5–320.

effect in independent adoption cases. A close comparison of the statutory language of FL § 5–320, which establishes the procedure for consent to a guardianship petition and governs the failure to object to a guardianship of a child, and of similar language in FL § 5–3B–20, which addresses the ramifications of a parent's failing to object to the adoption of a child, reveals that the Legislature intended for both statutes to have the effect of rendering a late-filed objection as a statutorily-deemed consent. FL § 5–320 provides, in relevant part:

(a) *Consent and acquiescence or best interests.*—A juvenile court may grant guardianship of a child only if:

&ast; &ast; &ast; &ast; &ast; &ast;

(iii) 1. Each of the child's living parents consents:

A. in writing;

B. knowingly and voluntarily, on the record before the juvenile court; or

C. *by failure to file a timely notice of objection* after being served with a show cause order in accordance with this subtitle . . .

FL § 5–320 (emphasis added).

Section 5–3B–20 of the Family Law Article, which governs the court's authority to grant independent adoptions, provides a procedure virtually identical to the one established by FL § 5–320 for guardianship proceedings. FL § 5–3B–20 states:

A court may enter an order for adoption only if:

(1) (i) 1. Each of the prospective adoptee's living parents consents:

A. in writing; or

B. *by failure to timely file notice of objection* after being served with a show cause order in accordance with this subtitle . . .

FL § 5–3B–20 (emphasis added). We agree with intermediate appellate court that "there is no basis to conclude that the [L]egislature intended the language of FL § 5–3B–20 be given different effect than the language of FL § 5–320." *In re: Adoption of Sean M.,* 204 Md.App. at 739, 42 A.3d at 731.

The Legislature's 2005 revisions to the adoption and guardianship statutes demonstrate that it intended for a late filing of a notice of objection to an adoption to become a consent to that adoption arising under operation of law:

[§ 5–3B–19] [9] is derived from former FL SECTION 5–317(c)(2), as it related to adoption under this subtitle, and revised to clarify that failure to respond to a show cause order is deemed to be consent.

Committee Note, 2005 Md. Laws, ch 464 § 3, p. 2718.

Furthermore, the thirty-day period to file an objection under Md. Rule 9–107 applies to guardianship and adoption proceedings alike, and thus provides additional support for the proposition that failure to adhere to the Rule's deadline constitutes a deemed consent in the context of guardianship cases *and* independent adoption cases. Md. Rule 9–107 provides the requirements to file an objection in either an adoption or guardianship proceeding:

(a) In general. Any person having a right to participate in a proceeding for adoption or guardianship may file a notice of objection to the adoption or guardianship. The note may include a statement of the reasons for the objection and a request for the appointment of an attorney.

(b) Time for filing objection.

(1) In general. . . . [*A* ]*ny notice of objection to an adoption or guardianship shall be filed within 30 days after the show cause order is served.*

Md. Rule 9–107 (emphasis added). The absence of any distinction or limitation between filing a notice of objection to a guardianship or an adoption demonstrates that there is no difference in the effect of the Rule in either proceeding.

Lastly, we have held that a statutorily-deemed consent to a guardianship petition is irrevocable. *In re Adoption/Guardianship No. 93321055,* 344 Md. 458, 486, 687 A.2d 681, 694

---

9. FL § 5–3B–20 was found previously as FL § 5–3B–19 prior to the 2005 revisions. Section 5–3B–19 became § 5–3B–20 in 2006. 2006 Md. Laws ch. 365, § 1, p. 1896.

(1997) ("*No. 93321055* ").[10]   *See In re Adoption/Guardianship of Audrey B.,* 186 Md.App. 454, 476, 974 A.2d 965, 978 (2009) (finding that the conclusions of *No. 93321055* apply with "equal force to the 2005 revisions to Maryland's guardianship and adoption laws.").   Thus, we deduce that the statutory scheme for independent adoption proceedings supports a similar holding.   The current statutory scheme that provides parents and putative parents notice of and a means to object to an independent adoption is similar to that employed in guardianship proceedings that was at issue in *No. 93321055,* where we observed that, "in cases in which the parent does not affirmatively consent to the guardianship ... the court, upon the filing of a petition, [must] enter and serve upon the parent a show cause order informing the parent of the petition.... a copy of the petition [must] also be served on the parent and [must] set forth a form of show cause order for the courts to use.   The order explains in plain language that the parents have the right to object to the guardianship but that, if they wish to object, they must file their objection with the court by the date set forth in the order." [11]   *Id.* at 478–79, 687 A.2d at

---

**10.**  In *No. 93321055,* we considered, in five cases where the State sought guardianship of several children in need of assistance (CINA), (1) whether the Circuit Court of Baltimore City had statutory authority to consider the parent's untimely objection; and (2) if a parent who failed to file a timely objection had the right to revoke the deemed consent. *No. 93321055,* 344 Md. at 464, 687 A.2d at 684.   Show cause orders had been served upon the parents, but they had failed to file objections within the time period provided by the court's order.   *Id.* at 466–74, 687 A.2d at 685–89.   Nonetheless, the trial court accepted the parents' late objections.   *Id.*

Our holding in *No. 93321055* involved the then-in-effect FL § 5–322(d), which provided: "If a person is notified under this section and fails to file notice of objection within the time stated in the show cause order ... (1) the court shall consider the person who is notified ... to have consented to the guardianship; and (2) the petition shall be treated in the same manner as a petition to which consent has been given."   Md.Code (1984, 1991 Repl.Vol.), FAM. LAW § 5–322.

**11.**  We note further that, similar to the form notice of objection to Sean's adoption that Petitioner received in conjunction with the show cause order, in *No. 93321055* there likewise was a form notice that was "appended to the [guardianship] show cause order, which also advises the parent of the need to file the notice before the stated deadline.   The

691. We held, therefore, that the failure to file within the statutory time period constituted a deemed consent. *Id.* at 479, 687 A.2d at 691. Once an untimely filed objection to a guardianship petition operates as a deemed consent, that "deemed consent under § 5–322(d) may not be revoked, for it is not a volitional consent but one arising by operation of law." *Id.* at 481, 687 A.2d at 692.[12]

■ Because a parent's or putative parent's deemed consent to his or her child's adoption arising from his or her failure to file a notice of objection is—as we held in *No. 93321055* in the context of guardianship proceedings—not a "volitional consent but one arising by operation of law," such deemed consent is, we believe, likewise irrevocable ordinarily. The nearly identical statutory language of FL § 5–321 and FL § 5–3B–21 demonstrates that the Legislature intended this result. FL § 5–3B–21(b) provides:

> (b) *Revocation period.*—(1)(i) Subject to subparagraph (ii) of this paragraph, *a parent may revoke consent at any time within 30 days after the parent signs the consent.*
>
> (ii) A parent may not revoke consent for adoption of a prospective adoptee if:
>
> > 1. In the preceding year, the parent has revoked consent for or filed a notice of objection to adoption of the prospective adoptee; and
> >
> > 2. The child is at least 30 days old and consent is given before a judge on the record.

FL § 5–3B–21(b). Analogous language is found in FL § 5–321, which applies to guardianship cases and which, as we have discussed, does not countenance a parent or a putative parent revoking a statutorily-deemed consent:

---

notice makes clear that the parent need do nothing more than sign the form and print his or her name, address, and telephone number in the places indicated and mail or deliver it to the court at the address shown." *Id.* at 479, 687 A.2d at 691.

**12.** The current statutory provision providing for the revocation of consent in the context of a guardianship proceeding is FL § 5–321.

Revocation period; waiver

(c)(1) Subject to paragraph (2) of this subsection, a *person may revoke consent to guardianship any time within the later of:*

   (i) *30 days after the person signs the consent;  or*

   (ii) *30 days after the consent is filed* as required under this section.

FL § 5–321(c) (emphasis added).  Under both statutes, revocation of an affirmative consent may be revoked within thirty days after the consent is signed.  FL § § 5–3B–21(b), 5–321(c).

William H. argues that *No. 93321055* and its progeny do not apply to the present case because, unlike those cases, this case is not a CINA guardianship/adoption.  He does not provide, however, any basis for us to conclude that the statutory interpretations of *No. 93321055* and the subsequent cases affirming its holding should not apply to the comparable regulatory and statutory language of Md. Rule 9–107 and FL § § 5–3B–01 through 5–3B–32 in other adoption proceedings. As explained above, we believe that the statutory schema of guardianship and adoption procedures are sufficiently similar in their plain language and legislative intent as to the effect of a late-filed notice of objection to have the same effect ordinarily in either a guardianship or an adoption proceeding.

### B.  The Deemed Consent Statutory Scheme of the Maryland Family Law Article and the Maryland Rules Does Not Offend Due Process

William H. asserts additionally that, even if his failure to file timely an objection is considered a deemed consent under Family Law § 5–3B–20 and Md. Rule 9–107, these provisions "constrain" unduly his fundamental right as a natural father to participate in raising his son.[13]  Although he does not refer us to any particular federal or Maryland constitutional provision,

---

**13.**  On the record before us, the paternity of Sean has not been established conclusively.

we assume, based on the arguments raised in his brief, that William H. rests this argument on the due process provision of the Fourteenth Amendment to the United States Constitution.[14]

It is well settled that "parents have a fundamental liberty interest in the care, custody, and management of their children...." *No. 93321055,* 344 Md. at 491, 687 A.2d at 697 (citing *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). In *Walker v. Gardner,* 221 Md. 280, 284, 157 A.2d 273, 275–76 (1960), we noted that the ramifications of severing permanently the natural tie between a parent and his child through an adoption "has led the Legislature and this Court to make sure, as far as possible, that adoption shall not be granted over parental objection unless that course clearly is justified."

▮▮▮▮ Nevertheless, a parent's fundamental right to raise his child "is not absolute and does not exclude other important considerations." *In re Mark M.,* 365 Md. 687, 705, 782 A.2d 332, 343 (2001). Rather, we have reaffirmed consistently that the State's interest in protecting the best interests of the child " 'takes precedence over the fundamental right of a parent to raise his or her child.' " *In re Yve S.,* 373 Md. 551, 569–70, 819 A.2d 1030, 1041 (2003) (quoting *Wolinski v. Browneller,* 115 Md.App. 285, 300–02, 693 A.2d 30, 37–38 (1997)). Any procedure by which a State interferes with or restrains this fundamental liberty must be "fundamentally fair." *No. 93321055,* 344 Md. at 491, 687 A.2d at 697.[15] What process is due to a

---

**14.** The Fourteenth Amendment provides, in relevant part, that no state may "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1.

**15.** In addition to the statutory interpretation issues raised in *No. 93321055,* we addressed also whether the parents' due process rights were violated by the court's refusal to excuse the parents' late-filed

parent in a termination of parental rights action "turns on a balancing of the three factors specified in *Mathews v. Eldridge*, 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976), *i.e.*, the private interests affected by the proceeding, the risk of error created by the State's chosen procedure, and the countervailing governmental interest supporting the use of the challenged procedure." *Id.*

Two important and countervailing interests compete here: Petitioner's assumed fundamental right to be a part of raising Sean as his assumed natural father, and the interest in "*timely* provid[ing] permanent and safe homes for children consistent with their bests interests" by establishing an orderly adoption procedure. FL § 5–3B–03(b)(1) (emphasis added).

William H. argues that the State's interest in stepparent adoptions is not sufficiently "compelling"—unlike the State's interest, as *parens patriae*, in protecting minors in CINA cases—so as to supersede a putative natural father's liberty interest in being a partner to raising his child. We see it differently. Because a "guiding principle" in adoption cases is "not the natural parent's interest in raising the child, but rather what best serves the interest of the child," we conclude that the State has a compelling interest in protecting the child's best interests in a disputed adoption case by establishing an effective and predictable (as much as possible) adoption process. *See In re Yve S.*, 373 Md. at 569–70, 819 A.2d at 1041; *In re Adoption/Guardianship No. A91–71A*, 334 Md. 538, 561, 640 A.2d 1085, 1096 (1994) (acknowledging the importance of a natural parent's right to raise his child, but stressing that the "controlling factor" in adoptions is what serves the best interests of the child) (citing *Lippy v. Breidenstein*, 249 Md. 415, 420, 240 A.2d 251, 253 (1968) ("The guiding principle in all child adoption and custody cases is that action should be taken which subserves the best interests of the child"); *Ex Parte Johnson*, 247 Md. 563, 569, 233 A.2d 779, 782 (1967) (recognizing that a parent's natural rights are

---

objections to the guardianship petitions. 344 Md. at 491, 687 A.2d at 697.

"carefully guarded" and will not be terminated unless the parents voluntarily consent or "the best interest of the child dictate to the contrary.")). *See also* FL § 5–3B–03(b)(1). One method by which the State may create an adoption procedure consistent with a child's best interests (after providing the natural parent the opportunity to object) is by rendering the parent's untimely objection to the adoption as an irrevocable consent to the adoption, thereby enabling the adoption process to proceed in a timely and orderly manner. *Id.*[16]

We turn now to the second *Mathews* factor: the risk of error created by the State's chosen procedure. We have held that, as to the risk of error created by the deemed consent scheme of guardianship proceedings, "zero tolerance" is not required under this second factor, as the absence of error is

probably not achievable in any procedure. The statutory deemed consent does not exist in a vacuum. It arises only after services on the parent of a show cause order that explains, in plain simple language, the right to object, how, where, and when to file a notice of objection, and the consequence of not filing one within the time allowed. A form notice of objection is attached to the order, and all the parent need do is sign it, print on it his or her name, address, and telephone number, and mail or deliver it to the address shown in the order.

*In re 93321055*, 344 Md. at 493, 687 A.2d at 698. We agree with the panel of the intermediate appellate court that the risk of error created by the present statutory scheme is limited. The statutorily-deemed consent in adoption proceedings oper-

---

**16.** Furthermore, the code revision committee note of FL § 5–3B–03(b)(1), entitled "Statement of findings, purposes" for independent adoptions, explains that the "timely" provision of "permanent and safe homes ... consistent with [the child's] best interests" was identified as a purpose of the statute in order to "emphasize the need for *prompt resolution* of a case in accordance with the 'best interests' standard...." 2005 Md. Laws, ch. 464, § 3 (emphasis added). This is further evidence that the State has an important interest in ensuring effective and orderly adoption procedures for the sake of the child's best interests.

ates only after a parent or putative parent receives, in "plain simple language," a show cause order explaining the consequences of filing an untimely notice of objection to the petitioned-for adoption. As the Court of Special Appeals observed, "[t]he show cause order must explicitly notify the parent of his or her right to object to the adoption, and the show cause order must include language substantially similar to the following:

> IF YOU DO NOT MAKE SURE THAT *THE COURT RECEIVES YOUR NOTICE OF OBJECTION ON OR BEFORE THE STATED DEADLINE,* YOU HAVE AGREED TO A TERMINATION OF YOUR PARENTAL RIGHTS.

Md. Rule 9–105(e)" (emphasis added). *In re: Adoption of Sean M.,* 204 Md.App. at 735–36, 42 A.3d at 728–29. The statutory scheme, therefore, may not have "zero tolerance" of error, but it leaves room for only a limited risk of error.

Moreover, William H. does not dispute that he was served personally and timely with a show cause order, or that he understood the consequences of not filing a notice of objection within the time allowed by the show cause order. The intermediate appellate court noted aptly that, as William H. was an attorney at all relevant times to the operative facts of this case, he "should have understood the importance of complying with court-ordered deadlines." *In re: Adoption of Sean M.,* 204 Md.App. at 749, 42 A.3d at 736. William H. offered no excuse as to why he did not file his notice of objection within the thirty-day time period, nor did he claim any disability or *force majeure* impeding his ability to file a timely objection.

We hold therefore that the statutory scheme of Sections 5–3B–1 through 5–3B–32 of the Family Law Article and its implementing mechanisms of Maryland Rules 9–105 and 9–107, which render an untimely filed notice of objection as an irrevocable consent by operation of law to an independent adoption, is fair fundamentally. Based on the *Mathews* factors, the procedures established in these statutory provisions provide fair notice to a parent or putative parent that his or

her right to participate in raising his child will terminate by requiring that (1) the parent receives notice that an adoption petition is filed and (2) the parent is made aware clearly that the court may enter an order for adoption only if each of the adoptee's parents consents by writing or by failure to file a notice of objection within the thirty-day statutory time period. FL §§§ 5–3B–14, 15, 20, 21. William H. does not contend that he did not receive such notice, that the notice was unclear, or that he did not have the opportunity to object to Stepfather's adoption of Sean. Hence, we hold that the statutory provisions are fundamentally fair procedures that did not deprive William H. of due process.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**